**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

THOMAS COSTELLO AND MEGAN
BAASE KEPHART, ET AL.,
INDIVIDUALLY AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED,

               Plaintiffs,

    v.

BEAVEX INC.,

               Defendant.

NO.  12-cv-7843

Judge Virginia M. Kendall

Magistrate Judge Mary M. Rowland

**DEFENDANT'S OPPOSITION**

**<u>TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. i

INTRODUCTION .............................................................................................. 1

PLAINTIFFS' MOTION IS LIMITED TO THEIR IWPCA UNAUTHORIZED
DEDUCTION CLAIM ...................................................................................... 4

GOVERNING LEGAL PRINCIPLES ............................................................... 5

    I.      Plaintiffs Have The Rule 23 Burden Of Surviving A "Rigorous Analysis"
          Of, And "Close Look" Into, Their Evidence ......................................... 5

    II.     Rule 23's Overarching Requirement:  Common Proof Which Can
          Generate Common Answers ................................................................. 6

    III.    Rule 23 Prohibits Analysis of the Merits or Predictions of the Probable
          Outcome Of Plaintiffs' Claim ............................................................. 7

ANALYSIS .......................................................................................................... 9

    I.      The IWPCA's Independent Contractor Exemption Requires Individualized
          Inquiries And Therefore Cannot Be Determined By Common Proof .................. 9

          A.      The Plain Language Of The IWPCA Mandates Individualized
                  Inquiries. ................................................................................ 9

          B.      Persuasive Decisions Directly On Point Correctly Hold That The
                  Plain Language Of The IWPCA Mandates Individualized
                  Inquiries. ............................................................................... 10

          C.      The Record Evidence Demonstrates That The IWPCA Independent
                  Contractor Analysis Cannot Be Determined By Common Proof ........... 12

                1.      The First Prong Of The IWPCA Independent Contractor
                      Exemption Cannot Be Determined By Common Proof............... 12

                2.      The Second Prong Of The IWPCA Independent Contractor
                      Exemption Does Not Support Certification. ................................ 15

                3.      The Third Prong Of The IWPCA Independent Contractor
                      Exemption Cannot Be Determined By Common Proof............... 17

## TABLE OF CONTENTS
(continued)

**Page**

II.     Plaintiff's Unauthorized Wage Deduction Claim Cannot Be Determined By Common Proof Because No Source Of Common Proof Identifies Who May Have Actually Suffered Deductions From Pay .......................................... 19

    A.     Common Proof Cannot Identify Substitute Drivers Who Are Putative Class Members But Who Did Not Suffer Deductions. .............. 19

    B.     Common Proof Cannot Identify Subcontractors Who Are Putative Class Members But Who Did Not Suffer Deductions ............................ 20

    C.     Other Putative Class Members Did Not Experience Deductions. ........... 21

SUMMARY AND CONCLUSION ............................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................................. 6

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*,
    133 S. Ct. 1184 (2013) ....................................................................................... 8, 17

*Burns v. First American Bank*,
    2006 WL 3754820 (N.D. Ill. Dec. 19, 2006) ............................................3, 8, 17, 21

*Carpetland U.S.A, Inc. v. Illinois Dep't of Employment Sec.*,
    776 N.E.2d 166 (Ill. 2002) ......................................................................................12

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1436 (2013) ......................................................................................5, 6, 7

*De Giovanni v. Jani-King Int'l, Inc.*,
    262 F.R.D. 71 (D. Mass. 2009) ..........................................................................11, 12

*Espensheid v. DirectSat*,
    705 F.3d 770 (7th Cir. 2013) ...................................................................................22

*General Telephone Co. of Southwest v. Falcon*,
    457 U.S. 147 (1982) .................................................................................................6

*In Re FedEx Ground Package System, Inc. Employment Practices Litigation*,
    273 F.R.D. 424 (N.D. Ind. 2008) ...................................................................... passim

*In Re FedEx Ground Package System, Inc. Employment Practices Litigation*,
    273 F.R.D. 516 (N.D. Ind. 2010) ...................................................................... passim

*Marcus & Millichap Inv. Svs. Of Chicago, Inc. v. Sekulovski*,
    639 F.3d 301 (7th Cir. 2011) ...................................................................................18

*Martins v. 3PD, Inc.*,
    2013 WL 1320454 (D. Mass. March. 28, 2013) ....................................4, 5, 17, 21

*Pastor v. State Farm Mut. Auto. Ins. Co.*,
    487 F.3d 1042 (7th Cir. 2007) ..................................................................................7

*Puffer v. Allstate Ins. Co.*,
    675 F.3d 709 (7th Cir. 2012) .........................................................................4, 5, 13

i

# TABLE OF CONTENTS
(continued)

**Page**

*Schleicher v. Wendt*,
618 F.3d 679 (7th Cir. 2010) ..............................................................8, 17

*Schwann v. FedEx Ground Package Sys., Inc.*,
2013 WL 1292432 (D. Mass. April 1, 2013) ............................................... passim

*Scovil v. FedEx Ground Package Sys., Inc.*,
886 F. Supp. 2d 45 (Me. 2012) ...............................................................11

*Szabo v. Bridgeport Machs., Inc.*,
249 F.3d 672 (7th Cir. 2001) ...........................................................2, 7, 8

*Thomas v. Matrix Corp. Servs., Inc.*,
2012 WL 3581298 (N.D. Ill. Aug. 17, 2012) ........................................11

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) .............................................................5, 6, 7, 8, 23

## STATUTES

820 ILCS 115/2 ................................................................................ passim

Illinois Unemployment Insurance Act, 820 ILCS 405/212 ........................12

Mass. Gen. L. ch. 149, § 148B..................................................................2

## OTHER AUTHORITIES

5 *Moore's Federal Practice*, § 23.23 (Matthew Bender 3d ed.)..................6, 7

Fed. R. Civ. P. 23 .............................................................................. passim

56 Ill. Admin. Code § 2372.200 ....................................................12, 15, 17

<u>**INTRODUCTION**</u>

Plaintiffs' motion for class certification must be denied for myriad reasons, but it suffers in particular from four independent fundamental and fatal flaws.

*First*, Plaintiffs' motion fails to address a fundamental and unique aspect of the Illinois Wage Payment and Collection Act ("IWPCA") which renders class certification inappropriate. Plaintiffs contend that the independent contractor issue "may be resolved through common evidence" consisting only of "the 'Owner/Operator agreements that Plaintiffs were required to sign, Defendant's documents related to its drivers and Defendant's (and its agents) own admissions regarding its treatment of drivers." (Pls. Class Br. at 10). That might be true in other states from which Plaintiffs string cite case decisions. (Pls. Class Br. at 7). But the IWPCA is different. The IWPCA (1) specifically requires the independent contractor analysis to go <u>beyond</u> the parties' agreement, and to review the circumstances of the parties' actual relationship "in fact," and (2) places the burden on the company to prove the independent contractor exemption. 820 ILCS 115/2. Accordingly, as a matter of law, BeavEx "must be allowed to present driver-by-driver evidence" to defend against Plaintiffs' IWPCA claim. *In Re FedEx Ground Package System, Inc. Employment Practices Litigation*, 273 F.R.D. 424, 489 (N.D. Ind. 2008) ("*In Re FedEx I*"). Class certification must therefore be denied because the independent contractor issue cannot be determined through common proof. *Id.* (denying motion to certify class of Illinois courier drivers on IWPCA claim substantively identical to Plaintiffs' IWPCA claim here because "the effects of the Operating Agreement's terms do not predominate over the individual circumstances of the 400 to 1,000 present and former drivers in Illinois"); *In Re FedEx Ground Package System, Inc. Employment Practices Litigation*, 273 F.R.D. 516, 520-24 (N.D. Ind. 2010) ("*In Re FedEx II*") (denying the Illinois plaintiffs' motion for reconsideration).

1

*Second*, Plaintiffs' motion impermissibly asks this Court to "say something like 'let's resolve the merits first and worry about the class later.'"  *In Re FedEx II*, 273 F.R.D. at 523 (quoting *Szabo v. Bridgeport Machs., Inc.*, 249 F.2d 672, 677 (7th Cir. 2001)).  Specifically, Plaintiffs contend that they should win on the merits of the second prong of the IWPCA independent contractor exception, so "there is no need to examine the other prongs."  (Pls. Class Br. at 12).  This is Plaintiffs' "Groundhog Day" argument:  the Illinois IWPCA plaintiffs in *In Re FedEx II* played it and lost; Plaintiffs' counsel here then re-played it in Massachusetts and lost, *Schwann v. FedEx Ground Package Sys., Inc.*, 2013 WL 1292432, at *3 (D. Mass. April 1, 2013) ("*Schwann*"); and Plaintiffs' brief re-plays it again here.[1]  Plaintiffs are flogging a dead horse, because "an evaluation of the probable outcome on the merits is not properly part of the certification decision."  *In Re FedEx II*, 273 F.R.D. at 523 (quoting Fed. R. Civ. P. 23, Adv. Comm. Notes to 2003 Amendments, other citation omitted); *Schwann*, at *3 (same).

*Third*, Plaintiffs support their motion with their own testimony, but offer no assurances – let alone credible evidence – that their situation is common to or typical of all, most, or even many members of the putative class.  For example, Plaintiffs present their own testimony suggesting that that they did not and could not have operated their own independent businesses, which suggests BeavEx cannot meet the third prong of the independent contractor exemption as to the Plaintiffs.  (Pls. Class Br. at 6) ("working as a BeavEx delivery driver was a full-time job … [f]or each of the Plaintiffs," so "it would have been virtually impossible for Plaintiffs to engage in any independent delivery work on top of their work for BeavEx") (emphasis added).  But unlike and atypical of Plaintiffs' circumstances, "a number of" the putative class members are actually "incorporated businesses," and a number also utilize their own subcontractors to

---

[1]  Massachusetts' wage payment law, Mass. Gen. L. ch. 149, § 148B, contains a substantively similar three prong independent contractor exemption.  *In Re FedEx I*, 273 F.R.D. at 456-57; *In Re FedEx II*, 273 F.R.D. at 525; *Schwann*, at *3 & n.1.

complete the BeavEx routes for which they contract. (Exh. 1, ¶ 6) (Declaration of Sandra Foster); (Exh. 2, ¶¶ 3-4, 6) (Declaration of Mike Stavola); (Exh. 3, ¶ 4) (Declaration of Patrick Miller). Some of these separately incorporated businesses might meet the IWPCA's "independent business" prong, while others might not. That question cannot be determined through common proof.

Finally, Plaintiffs' class definition is unmanageable and unworkable because no common proof exists from which this Court can determine whether any individual putative class member actually suffered the injury Plaintiffs allege – unauthorized wage deductions. Plaintiffs define the class as "all persons who have provided delivery driver services directly for BeavEx" for the last eleven years. (Pls. Class. Br. at 8). This definition includes the subcontractors discussed in the preceding paragraph, who provided delivery driver services directly for BeavEx but did not contact directly with BeavEx. Plaintiffs' proposed class definition also encompasses numerous "substitute" drivers who filled in for regular drivers in the putative class. Neither the subcontractor drivers nor the substitute drivers were paid directly by BeavEx. BeavEx probably did not make any deductions from the pay of these subcontractors or substitute drivers, unless the deductions were passed on by the party which contracted with BeavEx or the regular driver. The payment documentation (referred to as "settlement statements") which identifies deductions made does not generally identify subcontractors of the parties which have contracted with BeavEx or substitute drivers. (Exh. 2, ¶ 3); (Exh. 3, ¶ 4). Individualized inquiries and investigations are therefore required to determine whether BeavEx actually made deductions from the pay of any particular individual who directly provided delivery services to BeavEx in the last eleven years. This state of affairs renders class certification unmanageable and impossible and is therefore fully dispositive here. *Burns v. First American Bank*, 2006 WL

3754820, at * 4 (N.D. Ill. Dec. 19, 2006) (Kendall, J.) ("if a Court cannot determine whether a particular individual is a member of the proposed class based on the class definition, the class will be unmanageable and not satisfy the superiority prong of Rule 23(b)(3)"); *Martins v. 3PD, Inc.*, 2013 WL 1320454, at *8 (D. Mass. March. 28, 2013) ("*Martins*") (denying motion to certify courier drivers' wage deduction claim substantively identical to the IWPCA claim for which Plaintiffs seek class certification here, because "[d]etermining whether and from which class members 3PD made improper deductions … would require complex individual inquiries not suited to class-wide litigation").

For these reasons and numerous others explained in more detail below, Plaintiffs' motion for class certification should be denied.

## PLAINTIFFS' MOTION IS LIMITED TO THEIR IWPCA UNAUTHORIZED  DEDUCTION CLAIM

Plaintiffs' Amended Complaint asserts three claims:  (1) an IWPCA claim seeking damages in the form of (a) unpaid wages and *(b) unauthorized deductions*; (2) an Illinois Minimum Wage Law ("IMWL") claim seeking damages for alleged (a) unpaid overtime and (b) failure to pay minimum wage; and (3) a claim for "unjust enrichment," which seeks damages for "work related expenses" Plaintiffs allegedly should not have had to pay.  (ECF #34 at 10-11). However, Plaintiffs' motion for class certification only mentions and discusses the IWPCA claim and, perhaps more importantly, only seeks to certify the alleged *unauthorized deductions* piece of that IWPCA claim.  Plaintiffs have therefore waived the right to seek class certification of their IWPCA unpaid wages claim, their IMWL claim, and their unjust enrichment claim.  *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718-20 (7th Cir. 2012) (plaintiffs waived Title VII disparate

impact claims, even though their complaint asserted both disparate treatment and disparate impact, because plaintiffs only sought class certification of the disparate treatment).[2]

This narrowing of Plaintiffs' class certification request is significant. Plaintiffs contend that there are only "two central inquires" for this Court to determine: whether the IWPCA independent contractor exemption applies, and "whether BeavEx made improper deductions from the drivers' pay." (Pls. Class Br. at 10). As explained in detail below, the IWPCA independent contractor exemption requires individualized evidence which precludes class treatment. *In Re FedEx I*, 273 F.R.D. at 489-90; *In Re FedEx II*, 273 F.R.D. at 522-23. And on the record here, as in *Martins*, at *8, the improper deduction issue cannot be determined by common proof. Class certification must therefore be denied.

## GOVERNING LEGAL PRINCIPLES

### I. Plaintiffs Have The Rule 23 Burden Of Surviving A "Rigorous Analysis" Of, And "Close Look" Into, Their Evidence

Plaintiffs cite a 1975 Seventh Circuit decision to support their contention that Rule 23 "is to be interpreted liberally and in favor of class certification." (Pls. Class Br. at 7). Subsequent (and very recent) Supreme Court authority mandates a more stringent analysis. Plaintiffs bear the burden – *i.e.*, they "must affirmatively demonstrate" – that class certification is appropriate. *Comcast Corp. v. Behrend*, 133 S. Ct. 1436, 1432 (2013) (reversing decision to certify a class, quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (reversing decision to certify a class)). Plaintiffs must "not only 'be prepared to prove that there are *in fact* [1]

---

[2] Plaintiffs filed their motion for class certification shortly before the end of discovery, without seeking an extended discovery period or additional class-related discovery. (ECF #13) (1/8/13 Minute Entry setting discovery deadline of September 27, 2013); (ECF #79) (Plaintiffs' motion for class certification, filed September 23, 2013). Under *Puffer*, Plaintiffs have waived any argument that their other asserted claims (as well as the other pieces of the IWPCA claim) can and should be pursued on a class basis. However, in the unlikely event that Plaintiffs are later granted leave to seek class certification of any of their other claims, BeavEx reserves the right to challenge certification of such claim(s) at that time, whether on the same or different grounds as those argued here.

sufficiently numerous parties, [2] common questions of law of fact,' [3] typicality of claims or defenses, and [4] adequacy of representation, as required by Rule 23(a). The [Plaintiffs] must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Id*. (quoting *Wal-Mart*, 131 S. Ct. at 2551).

Rule 23(a) requires the Court to perform a "**rigorous analysis**." *Wal-Mart*, 131 S. Ct. at 2551 ("certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied' …. '[A]ctual, not presumed, conformance with Rule 23(a) remains … indispensable'") (emphasis added, quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 160 (1982) (reversing decision to certify a class)). "Rule 23(b)'s predominance criterion [Rule 23(b)(3)]," which Plaintiffs rely upon here, "is even more demanding than Rule 23(a)." *Comcast Corp.*, 133 S. Ct. at 1432. Rule 23(b)(3) requires the Court to "**take a 'close look'**" at whether common questions predominate over individual ones." *Id*. (emphasis added, quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (affirming Third Circuit's decision to vacate the district court's decision to certify a settlement class)).

## II. Rule 23's Overarching Requirement:  Common Proof Which Can Generate Common Answers

The Supreme Court has observed that the Rule 23(a)(2) commonality requirement and the Rule 23(a)(3) typicality requirement "tend to merge," and that both "also tend to merge" with the Rule 23(a)(4) adequacy requirement. *Falcon*, 457 U.S. at 157 n.12. Likewise where, as here, plaintiffs attempt to satisfy Rule 23(b) through Rule 23(b)(3), the Rule 23(a)(2) commonality requirement "tends to merge" with the Rule 23(b)(3) predominance requirement. 5 *Moore's Federal Practice*, § 23.23[6] at 23-88 (Matthew Bender 3d ed.) ("*Moore's*"). This is particularly

true when the court "conclude[es] that unique factual circumstances bar certification."  5 *Moore's*, § 23.23[4][h] at 23-86.

The thrust of BeavEx's argument is that unique factual circumstances bar certification – or, to be more precise, that this Court must wade through the unique factual circumstances of each putative class member to determine whether each one actually suffered the same alleged injury as Plaintiffs, and then BeavEx's defense to each such alleged injury.  Thus, while the Rule 23(a) requirements serve distinct functions, this brief will focus on the unique factual circumstances at issue here, and why Plaintiffs' IWPCA claim requires individualized factual inquiries, rather than address each Rule 23(a) requirement in checklist fashion.  At the end of the day, it does not matter whether Plaintiffs' failure to carry their burden is labeled a lack of commonality, typicality, adequacy, predominance, or superiority.  Class certification would be improper because Plaintiffs cannot present common proof to generate "common *answers*" to the issue of IWPCA liability for each potential class member.  *Wal-Mart*, 131 S. Ct. at 2551 (italics in original); *Pastor v. State Farm Mut. Auto. Ins. Co.*, 487 F.3d 1042, 1047 (7th Cir. 2007) ("The picture of a federal district judge presiding over thousands of [or at least 825] evidentiary hearings each involve a trivial amount of money is not a pretty one").

### III.  Rule 23 Prohibits Analysis of the Merits or Predictions of the Probable Outcome Of Plaintiffs' Claim

The Supreme Court and the Seventh Circuit have recognized that the "rigorous analysis" mandated by Rule 23 may sometimes require the court to "probe behind the pleadings," and that "the 'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'"  *Comcast Corp.*, 133 S. Ct. at 1432 (quoting *Wal-Mart*, 131 S. Ct. at 2552) (internal citations omitted); *Szabo*, 249 F.3d at 676-77 (cited favorably in *Wal-Mart*, 131 S. Ct. at 2552).  But just because a court's rigorous class

7

certification analysis might overlap in some respects with merits issues does not mean that the court is permitted to make any decisions on the merits. In fact, the opposite is true: "an evaluation of the probable outcome is not properly part of the certification decision." Fed. R. Civ. P. 23, Adv. Comm. Notes to 2003 Amendments; *Burns,* 2006 WL 3754820, at *2 ("While this preliminary inquiry into the merits [permitted by *Szabo*] allows the Court to understand the elements of the parties' claims and defenses and the nature of the evidence that must be presented to adjudicate them, the Court will not assess the ultimate merits of those claims") (citations omitted).

Justice Ginsburg colorfully explained that "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013). Accordingly, any consideration of merits issues must be limited to those issues *necessary to deciding class certification. Id.* at 1195 ("Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied"); *id* ("a district court has no 'authority to conduct a preliminary inquiry into the merits of a suit' at class certification unless it is necessary 'to determine the propriety of certification'") (quoting *Wal-Mart*, 131 S. Ct. at 2552 n.6) (internal citation omitted); *Schleicher v. Wendt*, 618 F.3d 679, 687 (7th Cir. 2010) ("Although we concluded in *Szabo*[] that a court may take a peek at the merits before certifying a class, *Szabo* insisted that this peek be limited to those aspects of the merits that affect the decisions essential under Rule 23"); *In Re FedEx II*, 273 F.R.D. at 523 ("the preliminary inquiry into the merits discussed in *Szabo* is a … limited one, that has at its focus not the substantive strength or weakness of the plaintiffs' claims but rather the merits of those

allegations that bear on the suitability of a case for class treatment under Rule 23(a) and (b)")

(citation omitted).

## ANALYSIS

### I. The IWPCA's Independent Contractor Exemption Requires Individualized Inquiries And Therefore Cannot Be Determined By Common Proof

#### A. The Plain Language Of The IWPCA Mandates Individualized Inquiries.

The IWPCA defines "employee" broadly: "any individual permitted to work by an

employer in an occupation." 820 ILCS 115/2. The statute contains a three prong exception for

an individual:

> (1) who has been and will continue to be free from control and direction over the performance of his work, both under his contract of service with his employer ***and in fact***; and

> (2) who performs work which is either outside the usual course of business or is performed outside all of the places of business of the employer unless the employer is in the business of contracting with third parties for the placement of employees; and

> (3) who is in an ***independently established*** trade, occupation, profession or ***business***.

820 ILCS 115/2 (emphasis added). The test is conjunctive, so all three elements must be

established. *In Re FedEx I*, 273 F.R.D. at 488. The alleged employer bears the burden of

establishing the independent contractor exemption. *Id*. By broadly defining "employee,"

narrowly defining the independent contractor exemption, and placing the burden of proof on the

alleged employer, the IWPCA effectively creates a presumption of "employment" status over

"independent contractor" status. *Id*. at 498.

This effective presumption is significant when considered together with the facts that (a)

the "control" prong must be analyzed "both under [the individual's] contract of service … ***and in

fact***," – *i.e.*, above and beyond the mere terms of the governing agreement – and (b) the

9

"independent business" prong likewise must be analyzed separate and apart from the governing agreement. *In Re FedEx*, 273 F.R.D. at 489. Simply stated, the plain language of the IWPCA "poses questions upon which [BeavEx] must be allowed to present driver-by-driver evidence." *Id*. Plaintiffs are thus completely wrong as a matter of law to contend that the independent contractor exemption "may be determined through common evidence … [n]amely, the "Owner/Operator agreements that Plaintiffs were required to sign, Defendants' documents related to drivers and Defendants (and its agents) own admissions regarding its treatment of drivers." (Pls. Class Br. at 10).

### B. Persuasive Decisions Directly On Point Correctly Hold That The Plain Language Of The IWPCA Mandates Individualized Inquiries.

Plaintiffs' brief ignores the plain language and meaning of the IWPCA. Instead, Plaintiffs present a general observation that "courts routinely certify misclassification claims," citing decisions applying the laws of Oregon, Pennsylvania, California and New York. (Pls. Class Br. at 7). The law of those states is materially different than the IWPCA because the "control" aspect of the independent contractor exemption *can* be determined by analyzing the individual's agreement of service with the company. *In Re FedEx I*, 273 F.R.D. at 489 ("unlike the laws of several other states already discussed in this opinion, **Illinois law** seems to contemplate that even when the "employment" agreement vests enough control in the hiring party to create an employment relationship, **the inquiry still must extend into the parties' extracontractual relationship**") (emphasis added); *see Schwann*, at *3 n.1 ("Judge Miller certified classes in the MDL action originating from Oregon, Pennsylvania, and California – the

states in which the right to control-common evidence test is applied") (also distinguishing *Scovil v. FedEx Ground Package Sys., Inc.*, 886 F. Supp. 2d 45 (Me. 2012), for the same reason).[3]

Plaintiffs also contend that courts "routinely certify claims involving employee misclassification …" and then string cite several decisions from this Court. (Pls. Class Br. at 1). Only one of those decisions involved the IWPCA's independent contractor exemption at issue here. The defendant in that decision, *Thomas v. Matrix Corp. Servs., Inc.*, 2012 WL 3581298 (N.D. Ill. Aug. 17, 2012), did not address the plain language of the IWPCA, and consequently the Court there had no reason or opportunity to analyze the independent contractor exemption like Judge Miller did in the MDL *In Re FedEx* litigation. Plaintiffs' Northern District of Illinois cases are therefore not on point.

While not controlling, Judge Miller's opinions in the MDL *In Re FedEx* litigation are particularly persuasive. The circumstances there and here – plaintiffs (courier drivers), defendants (FedEx and BeavEx), and issues (independent contractor misclassification under the IWPCA and numerous other state laws)—are nearly identical. Judge Miller certainly has more experience with this issue than any other jurist. And Judge Miller's *In Re FedEx I* and *II* opinions are thorough and well-reasoned. Plaintiffs' brief offers no reason why or how Judge Miller got it wrong, or why or how this Court could or should reach a different conclusion than *In Re FedEx* and *Schwann*.[4] For all the reasons explained in *In Re FedEx I* and *II* and *Schwann*,

---

[3]   *See also In Re FedEx I*, 273 F.R.D. at 454 (New York law), at 457-59 (California law), at 469-70 (Pennsylvania law), and at 476 (Oregon law).

[4]   Plaintiffs' brief does cite, in a footnote and without discussion, *De Giovanni v. Jani-King Int'l, Inc.*, 262 F.R.D. 71 (D. Mass. 2009). (Pls. Class Br. at 7 n.1). That is not a courier driver case, but it does address Massachusetts' three prong independent contractor exemption, which is similar to the IWPCA's. It observes that the record evidence on the "control" prong "indicates that there is a great degree of diversity between" the putative class members. *Id.* at 85. The decision nevertheless concludes that the control "question can be answered with reference to common facts," but does not explain how or why that could be so. *Id. In Re FedEx II* acknowledges *Jani-King*, but refuses to follow it. 273 F.R.D. at 523

BeavEx "must be allowed to present driver-by-driver evidence" to defend this case. *In Re FedEx I*, 273 F.R.D. at 489, *Schwann*, at *3. Class certification should therefore be denied. *Id*. at 490 (the driver contract and associated company documents "do not predominate over the individual circumstances of [825] present and former drivers in Illinois"); *Schwann*, at *3.

### C. The Record Evidence Demonstrates That The IWPCA Independent Contractor Analysis Cannot Be Determined By Common Proof.

The record evidence confirms the conclusions of *In Re FedEx* and *Schwann* that the three prong test requires individualized inquiries, and cannot be determined through common proof.

### 1. The First Prong Of The IWPCA Independent Contractor Exemption Cannot Be Determined By Common Proof.

The first prong requires BeavEx to prove that each putative class member was "free from control over the performance of his work, ***both*** under his contract of service ***and in fact***." 820 ILCS 115/2(1). BeavEx must therefore demonstrate that it "didn't actually exercise control" over the putative class members. *In Re FedEx II*, 273 F.R.D. at 522 (citing *Carpetland U.S.A, Inc. v. Illinois Dep't of Employment Sec.*, 776 N.E.2d 166, 180-85 (Ill. 2002)).[5] Twenty-five different factors are relevant to this analysis. *Id*.; 56 Ill. Admin. Code § 2732.200(g). These factors include, for example, whether the company engages the worker on a "permanent basis," and whether the company sets the price and credit terms for the product or service it offers to clients. 56 Ill. Admin. Code § 2732(g)(7) and (19).

---

("this court isn't similarly convinced that in this case review of the three-prong test can be limited to common evidence, at least not without effectively determining the merits of the plaintiffs' claim"). *Schwann* follows Judge Miller's analysis in *In Re FedEx* by noting *Jani-King* but refusing to follow it. *Schwann*, at *3 ("Like MDL Transferee Judge Miller, this court is not persuaded that the first and third prongs of section 148B may be answered with reference to common facts, as the district court held in *Jani-King*").

[5]   *Carpetland* involved the Illinois Unemployment Insurance Act, 820 ILCS 405/212, not the IWPCA. However, the two statute's definitions of "employee" and the independent contractor exemption are identical, so courts apply precedent interpreting both statutes interchangeably. *In Re FedEx II*, 273 F.R.D. at 522.

12

Plaintiffs' Motion is utterly silent with regard to the first prong of the independent contractor exemption. Plaintiffs have therefore waived the point. *Puffer*, 675 F.3d at 718-20. Plaintiffs' silence also implicitly concedes that both *In Re FedEx* and *Schwann* correctly decided that the first prong cannot be decided by common evidence. *In Re FedEx I*, 273 F.R.D. at 489 (the "control" inquiry "must extend into the parties' extracontractual relationship," and the defendant "must be allowed to present driver-by-driver evidence"); *In Re FedEx II*, 273 F.R.D. at 521 ("FedEx must be given a chance to … present[] both common and individualized evidence" to "prove its drivers' freedom from control, not only under the Operating Agreement, but also 'in fact'"); *Schwann*, at *3 ("the first prong … require[s] individualized inquiries … FedEx can only show that a driver was an independent contractor by proving that he or she was not only free from the company's control under the Operating Agreement, but was also free 'in fact'").

The record evidence proves the point. Even though Plaintiffs' brief does not analyze or address the first prong, Plaintiffs submitted evidence suggesting a lack of control of the performance of their work. *First*, for example, Plaintiffs testified that "BeavEx does <u>not</u> permit drivers to take breaks or run personal errands" during their routes," which suggests control. (Pls. Class. Br. at 4) (emphasis added, citing Costello Dep. at 195; Kephart Dep. at 168-69; and Daoud Dep. at 157). But other putative class members have testified to just the opposite. In their own individual experiences, BeavEx *does* permit couriers to take breaks and run personal errands, which cuts against control by BeavEx. (Exh. 4, ¶ 4) (Declaration of Ramunas Inokaitis); (Exh. 5, ¶ 8) (Declaration of Robert Singer). What about all the other putative class members? Plaintiffs all admitted that they do not have any personal knowledge about the individual circumstances of all the other class members. (Exh. 6 at 151-53) (Plaintiff Costello Dep.); (Exh. 7 at 93-97, 178-80) (Plaintiff Kephart Dep.); (Exh. 8 at 49-52) (Plaintiff Daoud Dep.). To

answer this control-related question, then, this Court will need to ask each putative class member about their own personal circumstances.

*Second*, Plaintiffs also present their own testimony to show that they each worked for BeavEx on a permanent basis, which suggests control. Plaintiffs' brief contends that none of the Plaintiffs "engaged in any other work" while they drove for BeavEx, and that working for BeavEx was a "full time job" for them, which made it "virtually impossible to engage in any independent delivery work on top of their work for BeavEx." (Pls. Class. Br. at 6) (citing Costello Dep. at 33; Kephart Dep. at 14-18; Daoud Dep. at 45). That may be, but other putative class member such as Patrick Miller perform courier services for other companies in addition to BeavEx. (Exh. 3, ¶ 2). Indeed, Plaintiff Kephart worked on a limited basis for BeavEx as a "backup" substitute driver for putative class member Christine Woldolkowski before she contracted with BeavEx. (Exh. 7 at 12-13, 15-21). Kephart worked for a different company while she served as Woldolkowski's substitute driver. (Exh. 7 at 16-17). The other Plaintiffs also acknowledged the common use of substitute drivers, (Exh. 6 at 176-79; (Exh. 8 at 79-85). Indeed, an undetermined "number" of putative class members similarly "utilize subcontractors" to drive their BeavEx routes. (Exh. 1, ¶ 6). Putative class members Mike Stavola and Patrick Miller are two such examples. (Exh. 2, ¶ 3); (Exh. 3, ¶ 4). All of these substitute drivers and these subcontractors and employees are putative class members. Did they work for BeavEx on a permanent basis like Plaintiffs, on a part-time basis, or just sparingly like Kephart did when she was a substitute? These questions simply cannot be answered with common proof; each putative class member *must* be asked about his or her own individual circumstances.

*Third*, the putative class members' experiences differ regarding whether BeavEx sets the price terms for its routes (which indicates control), or whether the drivers have the power to

14

negotiate price terms (which indicates a lack of control). In Plaintiff Daoud's experience, he could not negotiate price. (Exh. 8 at 87-92). Other putative class members have successfully negotiated price terms. (Exh. 2, ¶ 6); (Exh. 3, ¶ 8); (Exh. 5, ¶ 10).

These differences between putative class members regarding relevant "control" facts and factors likely results from the fact that some drove almost exclusively for a single client or two, and those particular clients imposed numerous restrictions on BeavEx which BeavEx necessarily required of drivers for those clients. (Exh. 6 at 148); (Exh. 8 at 33-36). Those client-mandated requirements suggest a degree of control that is arguably inconsistent with independent contractor status. Other class members who drove part-time, or for multiple clients, or for clients without such demanding requirements, had different experiences regarding facts and factors relevant to the "control" analysis. Whatever the reasons, the factual record here demonstrates that *In Re FedEx* and *Schwann* got it right, and that the first prong of the IWPCA independent contractor test cannot be determined through common proof.

2. **The Second Prong Of The IWPCA Independent Contractor Exemption Does Not Support Certification.**

The second prong considers the scope of the company's business. 56 Ill. Admin. Code § 2372.200(f). BeavEx does not contend that this prong requires individualized proof. Indeed, both *In Re FedEx* and *Schwann* acknowledge as much. However, both *In Re FedEx* and *Schwann* properly recognize that this is not outcome determinative. That the second prong of the independent contractor exemption may be decided by common evidence does not eviscerate, obviate, or render the other two prongs irrelevant. *In Re FedEx II*, 273 F.R.D. at 523 (the fact that the second prong may be decided "by presenting common evidence" does not "obviate[e] the need to determine the other two elements" or "render[] the remaining two elements irrelevant"); *Schwann*, at *3 (the class certification inquiry must "consider[] the test as a whole").

15

That is because deciding class certification based on one prong of the three prong test would effectively be a "decision on the merits, which is improper at the class certification stage." *In Re FedEx II*, 273 F.R.D. at 523; *Schwann*, at *3.

Yet that is precisely what Plaintiffs ask this Court to do here. Plaintiffs contend that they are guaranteed to win on the second prong of the independent contractor exemption, "so there is no need to examine the other prongs":

> Here, the drivers' delivery services are not just the normal course of BeavEx's business, but BeavEx's whole business. Moreover, the BeavEx terminals, delivery routes, and customer drop-off locations are all within BeavEx's place of business. BeavEx requires the same services of every driver, and these services are governed by common documents, particularly the Owner/Operator Agreements executed by the drivers. There is no need to scrutinize individual drivers' conduct to determine whether their services are outside BeavEx's usual course of business. **Because it is patently obvious** that the services provided by the proposed class members – performing package pick-up and delivery services – is within BeavEx's usual course of business and because this fact, can be shown through common evidence, **there is no need to examine the other prongs**.

(Pls. Class Br. at 12) (emphasis added, citations omitted). Plaintiffs in *In Re FedEx* made the exact same argument and lost because Rule 23 prohibits it. *In Re FedEx II*, 273 F.R.D. at 523 ("a determination that [BeavEx] can't rebut this [second] prong of the test, obviating the need to determine the other two elements, would be a decision on the merits, which is improper at the class certification stage … Ruling on the merits before deciding class certification also would run afoul of the rule against one-way intervention"). Plaintiffs' counsel here made the exact same argument in *Schwann* and lost because Rule 23 prohibits it:

> Plaintiffs' position that one can shortcut the statutory test by making the classification decision based solely on common evidence directed to the second prong … while it has the attraction of expedience, effective presumes that the drivers were employees of [BeavEx]. Although the plaintiffs' conclusion may ultimately prove correct, it is premature to reach it now without considering the test as a whole.

*Schwann*, at *3.[6]  The same result is required here because, once again, Rule 23 prohibits it.

*Amgen*, 133 S. Ct. 1194-95; *Schleicher* 618 F.3d at 687; *In Re FedEx II*, 273 F.R.D. at 523;

*Schwann*, at *3; and *Burns*, 2006 WL 3754820, at *2.[7]

### 3.      The Third Prong Of The IWPCA Independent Contractor Exemption Cannot Be Determined By Common Proof.

The third prong, like the first prong, considers numerous relevant factors.  *In Re FedEx*

*II*, 273 F.R.D. at 524; 56 Ill. Admin. Code § 2732.200(e) (listing thirteen relevant factors).

These factors include whether the individual gains the profits and bears the loss of the business,

hires his or her own workers or helpers, and makes the businesses' services available to the

general public.  56 Ill. Admin. Code § 2732.200(e)(3), (4), and (9).  Accordingly, just like the

first prong, the third prong "require[s] that [BeavEx] be given the opportunity to present

individualized evidence to rebut the independent business factor."  *In Re FedEx II*, 273 F.R.D. at

522-23; *Schwann*, at *3 ("The … third prong[] … require[s] individualized factual inquiries …

---

[6]  Undeterred, Plaintiffs' brief here regurgitates the substance of Plaintiffs' (unsuccessful) brief in *Schwann*:

> FedEx requires the same services of every driver, and these services are governed by common documents, particularly the Operating Agreements executed by contracting drivers.  There is no need to scrutinize individual drivers' conduct to determine whether their services are outside FedEx's usual course of business.  **Because it is patently obvious** that the services provided by the proposed class members – performing package pick-up and delivery services – is within FedEx's usual course of business and because this fact, without more, means that class members are employees, **there is no need to examine the other prongs**.

*Schwann v. FedEx Ground Package Sys., Inc.*, (D. Mass. Case No. 11-cv-11094-RGS) (ECF #56 at 14) (emphasis added).

[7]  *Martins* is an independent contractor / employee courier decision in which the district court granted the plaintiffs' motion for summary judgment before deciding class certification, and based on that summary judgment ruling found that the plaintiffs satisfied Rule 23(a)(2).  *Martins*, at *6 & n.2.  The defendant company there appears to have agreed to this procedure; the decision does not suggest that the defendant opposed it.  *Id*. at *1.  If the defendant there had objected to the district court determining the plaintiffs' motion for summary judgment before class certification, that would have misapplies Rule 23, violates the rule against one-way intervention, and contradicted Supreme Court precedent.  (*Supra*, at 7-9).

Prong three requires FedEx to provide individualized evidence about each driver's history of 'customary' work apart from his or her duties with FedEx").

As with the first prong, the record evidence proves the point. None of the Plaintiffs operated an independent business. As discussed above, all three of them worked "full-time" for BeavEx. (Pls. Class Br. at 6). Plaintiffs therefore represent one end of the "independent business" spectrum. Putative class members Mike Stavola and Patrick Miller represent the other end of the spectrum. Stavola and Miller contract with BeavEx through separate corporate entities – independent businesses which gain the profits and bear the losses of their business enterprise – and provide services to other companies in addition to BeavEx. (Exh. 2, ¶¶ 3-4, 6); (Exh. 3, ¶¶ 2, 4). Somewhere in the middle of these two ends of the spectrum lie numerous putative class members who operate individually like Plaintiffs but, unlike and atypical of Plaintiffs, have incorporated their own businesses. (Exh. 1, ¶ 6). Do these independently incorporated businesses meet the thirteen factor independent business test? Some likely do, and some likely don't. The only way to know for sure – *i.e.*, the only way to determine whether they meet the third prong of the IWPCA independent contractor exemption – is to review the individual circumstance of each separately incorporated putative class member.

Against this backdrop, Plaintiffs' third prong argument misses the mark. Plaintiffs' brief focuses on the actual routes serviced by the drivers, and contends that the drivers "lack [a] proprietary interest in their *routes*." (Pls. Class Br. at 13) (emphasis added). That is true – the routes are BeavEx's, not the putative class members' – but irrelevant to the third prong inquiry. The question is not who owns the routes the putative class members drive. The third prong question is whether each putative class member operates a "freestanding enterprise." *Marcus & Millichap Inv. Svs. Of Chicago, Inc. v. Sekulovski*, 639 F.3d 301, 311 n. 4 (7th Cir. 2011) (the

third prong asks whether the alleged employee "was potentially … a freestanding enterprise"). Plaintiffs did not, but some putative class members indisputably did and do. (Exh. 1, ¶ 6); (Exh. 2, ¶¶ 3-4); (Exh. 3, ¶¶ 4, 9). Still other putative class members are incorporated, (Exh. 1, ¶ 6), but the corporate entity may or may not actually be a truly freestanding enterprise. That will depend on the individual circumstances. In short, and in sum, the third prong cannot be established with common proof.

## II. Plaintiff's Unauthorized Wage Deduction Claim Cannot Be Determined By Common Proof Because No Source Of Common Proof Identifies Who May Have Actually Suffered Deductions From Pay

### A. Common Proof Cannot Identify Substitute Drivers Who Are Putative Class Members But Who Did Not Suffer Deductions.

Plaintiffs' proposed class suffers from another fatal flaw separate and apart from the IWPCA issues explained above. Plaintiffs' proposed class definition of "all persons who provided delivery driver services directly for BeavEx, Inc. …" does not and cannot distinguish between those individuals who might properly be part of the putative class, and those who cannot. That is because Plaintiffs have narrowed their class allegations to drivers from whose pay BeavEx made unauthorized deductions. Plaintiffs are clearly among those injured by this alleged conduct, at least during the periods they served as primary BeavEx drivers. Plaintiff Kephart, however, served as substitute driver for a period of time. Substitute drivers like Kephart are included in the putative class definition. But Plaintiff Kephart was not paid directly by BeavEx for her work as a substitute driver. Rather, Plaintiff Kephart was paid directly by regular driver Christine Wondolkowski. (Exh. 7 at 19-20, 28-29). Plaintiff Kephart therefore did not incur any deductions, must less unauthorized deductions, from BeavEx for her work as a substitute driver. But Plaintiff Costello also served as a substitute driver, and he testified that BeavEx paid him directly for his work as a substitute driver. (Exh. 6 at 176-77).

Substitute drivers are putative class members because they "provided delivery services directly for BeavEx." Some were paid directly by BeavEx, and therefore suffered the injuries alleged by the Plaintiffs. Others were not paid directly by BeavEx, and therefore did not suffer the injuries Plaintiffs allege. The settlement statements Plaintiffs claim will identify the deductions cannot to distinguish between these two groups. Consequently, common proof does not exist to determine whether substitute drivers who fall within Plaintiffs' proposed class definition are actually members of the putative class.

### B. Common Proof Cannot Identify Subcontractors Who Are Putative Class Members But Who Did Not Suffer Deductions.

The individual circumstances of putative class members Mike Stavola and Patrick Miller create similar issues. Stavola and Miller operate their own separate and independent businesses which contract with BeavEx. Stavola and Miller are among the numerous corporate entities which contract with BeavEx. (Exh. 1, ¶ 6). Stavola and Miller bid on routes on behalf of their separate and independent businesses, and engage between 8 and 20 different subcontractors to drive those routes. (Exh. 2, ¶ 3); (Exh. 3, ¶ 4). These subcontractors of Stavola's company and Miller's company are part of the putative class because they "provided delivery services directly for BeavEx." But Stavola's company and Miller's company each receive one single "aggregate" pay statement (called a "settlement statement") from BeavEx for the work of all their subcontractors. Stavola's company and Miller's company then pay their subcontractors directly. Just like Kephart when she was a substitute driver, BeavEx does not make any deductions from the pay of the subcontractors engaged by Stavola's company and Miller's company. (Exh. 2, ¶ 3); (Exh. 3, ¶ 4). BeavEx's settlement statements therefore do not distinguish between drivers who might be in the putative class – *i.e.*, drivers who suffered deductions – and drivers who might not.

The district court in *Martins* encountered similar facts and record evidence. *Martins*, at *8. The district court there decided that class certification was not possible on the unauthorized deduction claim because "[d]etermining whether and from which class members 3PD made improper deductions … would require complex individual inquiries not suited to class-wide litigation." *Id.* The same result is required here. Plaintiffs' proposed class definition includes individuals who might fall within the actual class, and others who will not. The distinction cannot be made through common proof. A class cannot be certified where, as here, "a Court cannot determine whether a particular individual is a member of the proposed class based on the class definition." *Burns*, 2006 WL 3754820, at *4.

### C. Other Putative Class Members Did Not Experience Deductions.

Putative class member Patrick Miller operates his own independent business which contracts with other companies in addition to BeavEx. (Exh. 3, ¶¶ 2, 4). Miller owns his own phones, and carries his own cargo insurance for his company. Consequently, BeavEx does not take *any* deductions from Miller's pay. (Exh. 3, ¶ 9). How many other putative class members are just like Miller? We do not know, and we cannot know without reviewing the individual circumstances of all the putative class members. Miller's situation definitively demonstrates that Plaintiffs' proposed class definition is unmanageable and unworkable, and that common proof is not available to determine even the most basic questions this Court must answer. *Burns*, 2006 WL 3754820, at *4.

### SUMMARY AND CONCLUSION

Plaintiffs' brief relies upon decisions certifying classes in independent contractor / employee cases from states other than Illinois, despite the fact that the IWPCA is materially different than the law in those other states. Plaintiffs' brief cites Northern District of Illinois

decisions that do not involve the IWPCA or do not contain any meaningful analysis of the IWPCA's independent contractor exemption. And Plaintiffs' brief cites Plaintiffs' own personal, individual testimony, even though Plaintiffs' circumstances are uncommon and atypical from many, if not most, other putative class members.

Plaintiffs' brief does not cite the *In Re FedEx* decisions, which are thorough, well-reasoned, and directly on point. Plaintiffs' brief does not make any mention of the IWPCA's plain language. Nor does Plaintiffs' brief address or discuss the IWPCA's requirement that the Court look past the parties' contract and review and analyze BeavEx's relationship "in fact" with each and every putative class member.

These material and dispositive failings are analogous to the plaintiffs' attempt to certify a class in *Espensheid v. DirectSat*, 705 F.3d 770 (7th Cir. 2013). There, as here, the plaintiffs proffered testimony from "unrepresentative 'representative'" witnesses. *Id.* at 776. There, as here, the plaintiffs made it unmanageably "difficult … to identify[] each class member within the current class definition without making individualized findings of liability." *Id.* Judge Posner was left with the impression that the plaintiffs there "must think that like most class action suits this one would not be tried – that if we ordered a class or classes to be certified, DirectSat would settle." *Id.* Plaintiffs' brief suggests the same probably is true here. (Pls. Class Br. at 21 n.3) (listing various ways in which individualized damages issues could be handled: "First, there is of course the possibility of class-wide settlement").

*Espenscheid* affirmed the district court's decision to deny class certification, and the same result is required here. The plain language of the IWPCA and the record evidence demonstrates that:

- Plaintiffs cannot meet the commonality requirement of Rule 23(a)(2) because the evidence will not lead to "common *answers*" among the putative class members. *Wal-Mart*, 131 S. Ct. at 2551 (italics in original);

- Plaintiffs cannot meet the typicality or adequacy requirements of Rule 23(a)(3) and (4) because their experiences as individuals working full time for BeavEx from whose pay BeavEx made deductions is not typical of the many putative class members who contracted with BeavEx as incorporated entities, operated as freestanding enterprises, and/or did not suffer unauthorized deductions; and

- Plaintiffs cannot meet the predominance or superiority requirements of Rule 23(b)(3) because membership in the proposed class cannot be determined from common proof, and because BeavEx "must be allowed to present driver-by-driver evidence" which will predominate over any common issues. *In Re FedEx I*, 273 F.R.D. at 498-90.

For all of these reasons, Plaintiffs' motion for class certification should be denied.


Dated: October 21, 2013                          Respectfully submitted,


                                                 BEAVEX INC., Defendant

                                                 By: ____/s/ Kevin M. Duddlesten_____
                                                 Kevin M. Duddlesten

Kevin M. Duddlesten, *admitted pro hac vice*
Texas Bar No. 00793644
MCGUIREWOODS LLP
816 Congress Ave., Suite 940
Austin, Texas 78701-2442
(512) 617-4516
(512) 617-4586 (Fax)

Teri L. Danish, *pro hac vice pending*
Texas Bar No. 05375320
MCGUIREWOODS, LLP
600 Travis Street, Suite 7500
Houston, Texas 77002
(832) 214-9911
(832) 214-9915 (Fax)

## CERTIFICATE OF SERVICE

I certify that on this 21st day of October, 2013, a true and correct copy of the foregoing instrument was forwarded, *via* e-file notification, to all counsel of record:

/s/ Kevin M. Duddlesten_____  _____