IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| THOMAS COSTELLO, MEGAN BAASE KEPHART, AND OSAMA DAOUD, ET AL., INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | ) ) ) ) ) | No. 12 C 7843 |
|  | ) |  |
| Plaintiffs, | ) | Judge Virginia M. Kendall |
| v. | ) |  |
|  | ) |  |
| BEAVEX INC., | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Thomas Costello, Megan Baase Kephart, Osama Daoud, and the class they seek to represent, worked for Defendant BeavEx, Inc., a courier company, as delivery drivers. The Plaintiffs brought the instant three-count Complaint on January 11, 2013 alleging that BeavEx unlawfully classified its delivery drivers as "independent contractors" when they should have been deemed "employees" under both Illinois statutory and common law. (Dkt. No. 34). This misclassification allegedly resulted in (1) deprivation of overtime wages in violation of the Illinois Minimum Wage Law ("IMWL"); (2) illegal deductions taken from the Plaintiffs' wages in violation of the Illinois Wage Payment and Collection Act ("IWPCA"); and (3) unjust enrichment of BeavEx. Specifically in Count II, the Plaintiffs allege that BeavEx unlawfully took deductions from their pay in order to fund uniforms, cargo insurance, workers' accident insurance, administrative fees, scanner fees, and cellular phone fees in violation of the IWPCA that would not have occurred were the Plaintiffs properly classified as "employees." *See* 820 ILCS 115/9. BeavEx moves for  summary judgment claiming  that the Federal Aviation

Administration Authorization Act of 1994 ("FAA") preempts the IWPCA because the FAA expressly preempts a State from enacting or enforcing a law related to a price, route, or service of any motor carrier. *See* 49 U.S.C. § 14501(c)(1). The Plaintiffs filed for summary judgment on Count II claiming that BeavEx cannot satisfy the IWPCA independent contractor exception to wage deductions based on the undisputed facts while concurrently moving the Court to certify this case as a class action pursuant to Fed. R. Civ. Pro. 23. For the reasons set forth below, BeavEx's motion for summary judgment and the Plaintiffs' motion for class certification are denied, and the Plaintiffs' motion for summary judgment on Count II is granted as to the named plaintiffs.

## STATEMENT OF MATERIAL UNDISPUTED FACTS[1]

Each of the parties to the present dispute has moved for summary judgment in their respective favor. Therefore, the Plaintiffs submitted a statement of undisputed material facts in support of their partial motion for summary judgment as well as a response to BeavEx's statement of undisputed material facts. Further, a majority of the undisputed material facts submitted by BeavEx are supported solely by the Declaration of Sandra Foster, the Senior Vice President for BeavEx. There are numerous statements throughout Foster's declaration that constitute statements of opinion and arguments, not statements of fact, contrary to Local Rule 56(a)(3). *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 (7th Cir. 2008). ("It is inappropriate to make legal arguments in a Rule 56.1 statement of facts.") (internal citations omitted); *Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) (a party's statement of material facts submitted pursuant to Local Rule 56.1 is improper where it fails to

---

[1] Throughout this Opinion, the Court refers to the Parties' Local Rule 56.1 Statements of Undisputed Material Facts as follows: citations to BeavEx's Statement of Material Facts (Dkt. 63) have been abbreviated to "Def. 56.1 St. ¶ __"; citations to the Plaintiffs' Response to Defendant's Statement of Material Facts (Dkt. 68) have been abbreviated to "Pl. Resp. 56.1 St. ¶ __"; and citations to the Plaintiffs' Statement of Material Facts (Dkt. 77) have been abbreviated to " Pl. 56.1 St. ¶ __."

cite to the record and is "filled with irrelevant information, legal arguments, and conjecture"). The purpose of Local Rule 56.1 statements of facts is to identify the relevant admissible evidence supporting the material facts that each party contends require either the granting or the denial of summary judgment. *See Markham v. White*, 172 F.3d 486, 490 (7th Cir. 1999) (the local rules governing summary judgment "assist the court by organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side proposes to prove a disputed fact with admissible evidence."). It is improper for a litigant to include legal or factual conclusions, arguments, or conjecture in a statement of material facts and accordingly, statements constituting such will be ignored by the Court.[2]

Background

BeavEx is one of the largest courier companies in the nation and its primary function is to perform same-day delivery service for clients across the country including in Illinois. (Pl. 56.1 St. ¶ 1, Ex. A; Def. 56.1 St. ¶ 1). BeavEx provides these delivery services for compensation through drivers classified as independent contractors by BeavEx, who drive their own vehicles. (Def. 56.1 St. ¶ 3, Pl. 56.1 St. ¶ 6). Plaintiffs and the class they seek to represent comprise a group of approximately 825 courier drivers who performed delivery services for BeavEx in Illinois from October 1, 2002 to the present. (Pl. 56.1 St. ¶ 3). BeavEx offers its clients both scheduled-route and on-demand delivery services. (Def. 56.1 St. ¶ 4). With regard to scheduled-route services, BeavEx clients dictate regular times and locations that pick-ups and drop-offs must be made, which are communicated to drivers through a manifest listing that day's delivery route information, including customer names, locations, order of deliveries, and a specified time for each delivery. (*Id.* at ¶ 5; Pl. 56.1 St. ¶ 11). At this time, BeavEx has approximately 280

---

[2] While self-serving statements can be used to create disputes of fact, that is not what BeavEx attempts here. In this case, BeavEx utilizes self-serving statements as legal conclusions, arguing that summary judgment is proper. The Court is not convinced without more.

scheduled routes in Illinois that it coordinates on a regular basis. (Def. 56.1 St. ¶ 7). With regard to on-demand delivery services, BeavEx often receives calls from clients for rush deliveries which tend to be variable and unpredictable. (*Id.* at ¶ 9-10).

BeavEx currently employs nine full-time employees and one part-time employee in Illinois to handle administrative and warehouse duties. (*Id.* at ¶ 16). The employees are paid on an hourly or salary basis and receive health insurance and other benefits. (Def. 56.1 St. ¶ 17). BeavEx also provides workers' compensation insurance, pays payroll taxes, and makes unemployment insurance contributions for its employees. (*Id.* at ¶ 18). BeavEx classifies its drivers as independent contractors as opposed to employees. (Pl. 56.1 St. ¶ 6). The drivers are paid by route for each delivery completed, instead of by hours or weeks worked, and do not receive benefits such as health insurance or workers' compensation. (Def. 56.1 St. ¶ 19-20). Nor does BeavEx pay drivers' payroll or unemployment insurance taxes. (*Id.* at ¶ 21). BeavEx uses drivers who are incorporated and others who are not, and some who utilize subcontractors to complete scheduled routes which are bid on and accepted by the driver. (*Id.* at ¶ 39). BeavEx does not prohibit or discourage its drivers from utilizing subcontractors, but drivers cannot engage a subcontractor or replacement driver without approval from BeavEx. (Def. 56.1 St. ¶ 40; Pl. 56.1 St. ¶ 31, Ex. E, F, and G).

Drivers' Operations

BeavEx drivers generally begin their shift by reporting to one of BeavEx's office locations. (Pl. 56.1 St. ¶ 8). Drivers use their own vehicles to provide the delivery service. (Def. 56.1 St. ¶ 29). Drivers are required to wear apparel with the BeavEx logo when performing deliveries and their cars are required to have the BeavEx name, logo, phone number, and Illinois Commerce Commission number on both sides. (Pl. 56.1 St. ¶14-15, Ex. D, E, F, and G). BeavEx

drivers operate their assigned routes under BeavEx's Illinois motor carrier number, and in order to utilize this number, drivers are required to lease their personal vehicles to BeavEx. (*Id.* at ¶ 32-33). Further, drivers are required to use scanners and record logs to make a record upon delivery of a package. (*Id.* at ¶ 16). BeavEx manages all communications with customers, however. (*Id.* at ¶ 20). BeavEx also has authority to discipline or terminate drivers who violate its policies through either an accumulation of minor breaches or one major breach. (*Id.* at ¶ 38-41).

Owner/Operator Agreement and Contract Management Services Contract

As a precondition of employment, all BeavEx drivers are required to sign both an Owner/Operator Agreement, which classifies drivers as independent contractors, and a contract with Contract Management Services ("CMS"). (*Id.* at ¶ 7 and 46). Under the owner/operator agreements, a driver can be terminated any time for any improper conduct. (*Id.* at ¶ 42). Further, if a customer stops contracting with BeavEx, BeavEx may terminate the driver's contract assigned to that customer's route. (*Id.* at ¶ 44, Ex. E, F, and G). Under the CMS agreements, BeavEx takes various deductions from drivers' pay, including deductions for occupational accident insurance, cargo insurance, uniforms, scanners, and "chargebacks." (*Id.* at ¶ 45, Ex. P, Q, and R). The drivers purchase both the occupational accident insurance and cargo insurance through BeavEx and CMS. (*Id.* at ¶ 48-49). BeavEx also takes deductions from drivers' pay for scanners, uniforms, phone chargers, CMS processing fees, and "chargebacks" if BeavEx determines a driver failed to satisfactorily complete a delivery. (*Id.* at ¶ 50-53).

The IWPCA and the FAAAA

The Plaintiffs bring their claim under Count II relying on the language of the IWPCA. The IWPCA provides that:

> deductions by employers from wages or final compensation are prohibited unless such deductions are (1) required by law; (2) to the benefit of the employee; (3) in

response to a valid wage assignment or wage deduction order; (4) made with the express written consent of the employee, given freely at the time the deduction is made; (5) made by a municipality with a population of 500,000 or more…or (6) made by a housing authority in a municipality with a population of 500,000 or more…

820 ILCS 115/9. The IWPCA applies to all employers and employees in Illinois. *See* 820 ILCS 115/1. The term "employee" does not include any individual:

(1) who has been and will continue to be free from control and direction over the performance of his work, both under his contract of service with his employer and in fact; and (2) who performs work which is either outside the usual course of business or is performed outside all of the places of business of the employer unless the employer is in the business of contracting with third parties for the placement of employees; and (3) who is in an independently established trade, occupation, profession or business.

820 ILCS 115/2. This is commonly referred to as the independent contractor exception. The Defendants, on the other hand, base their motion for summary judgment on the preemption clause found in the FAAAA. Congress enacted the FAAAA in 1994 to address deregulation of the trucking industry. The FAAAA provides, in part:

[A] State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier…with respect to the transportation of property.

49 U.S.C. § 14501(c)(1).

## STANDARD OF REVIEW

"Summary judgment is proper when, viewing all facts and inferences in favor of the nonmoving party, no genuine dispute as to material fact exists, and the moving party is entitled to judgment as a matter of law." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). Whether a fact is material depends on the underlying substantive law that governs the dispute. *Id.* And a genuine dispute is one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citation omitted). Summary judgment is appropriate where the

moving party shows that the nonmoving party cannot prove an element essential to its case. *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012). Where the moving party has properly supported its motion, the nonmoving party must come forward with facts that show there is a genuine issue for trial. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 951 (7th Cir. 2013).

## DISCUSSION

### I. BeavEx's Motion for Summary Judgment

#### A. Preemption

BeavEx's motion for summary judgment claims there is preemption of the IWPCA based on FAAAA section 14501. If this federal statute preempts the Plaintiffs' unlawful deduction claim, then Count II of the Complaint must fail and summary judgment is proper.

The constitutional basis for federal preemption is the Supremacy clause, which states, "[The Laws of the United States…shall be the supreme Law of the Land[.]" U.S. Const. Art. VI, Cl. 2. When considering preemption, a court must "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). Accordingly, the "purpose of Congress" is the ultimate touchstone of preemption analysis. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992).

To understand Congress' purpose, the first consideration is the text of the federal law, in this case, § 14501(c). In relevant part, it states:

> (1) General rule.—Except as provided in paragraphs (2) and (3), as State…may not enact or enforce a law, regulation, or other provision having the force and effect of law *related to a price, route, or service of any motor carrier…with respect to the transportation of property.*

49 U.S.C. § 14501(c) (emphasis added). Section 14501 had its genesis in the Airline Deregulation Act of 1978 (ADA), 92 Stat. 1705, which "largely deregulated the domestic airline industry." *See Dan's City Used Cars, Inc. v. Pelkey*, 133 S.Ct. 1769, 1775 (2013). The ADA aimed to "ensure that states would not undo federal deregulation with regulation of their own." *Id.* (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992)). To safeguard this, the ADA included a preemption provision which prohibited states from enacting or enforcing any law "related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). Two years later, Congress deregulated the trucking industry using largely the same language as the ADA. *See* Motor Carrier Act of 1980, Pub. L. No. 96-296, 94 Stat. 793.

Congress additionally limited the states' ability to regulate trucking by enacting the FAAAA of 1994 (addressing air and motor carriers). "Borrowing from the ADA's preemption clause, but adding a new qualification,…the FAAAA supersedes state laws 'related to a price route, or service of any motor carrier…*with respect to the transportation of property*.'" *Dan's City*, 133 S.Ct. at 1774 (quoting 49 U.S.C. § 14501(c) and adding emphasis). That added phrase "'massively limits the scope of preemption' ordered by the FAAAA.'" *Id.* at 1778 (quoting *City of Columbus v. Ours Garage and Wrecker Service, Inc.*, 536 U.S. 424, 449 (2002) (Scalia, J. dissenting)). Under this restriction, "it is not sufficient that a state law relates to the 'price, route, or service' of a motor carrier in any capacity; the law must also concern a motor carrier's 'transportation of property.'" *Id.* Because of the similarity of the preemption provisions contained in the FAAAA and ADA, cases interpreting the ADA will be equally instructive and controlling here. *See Rowe v. New Hampshire Motor Transport Association*, 552 U.S. 364, 370 (2008) (*quoting Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 85 (2006) ("when judicial interpretations have settled the meaning of an existing statutory provision,

repetition of the same language in a new statute indicates as a general matter, the intent to incorporate its judicial interpretations as well")).

The FAAAA preempts a state law (1) whenever the state law actually references the rates, routes, or services of carriers or (2) if it has a "significant impact" on Congress' deregulatory objectives. *See Morales*, 504 U.S. at 384 (the critical phrase, "relating to," expresses "a broad pre-emptive purpose"); *Rowe*, 552 U.S. at 371 (preemption occurs at least where state laws have significant impact related to Congress' deregulatory and preemption-related objectives); *see also Travel All Over the World, Inc. v. Saudi Arabia*, 73 F.3d 1423, 1432 (7th Cir. 1996) (state law is preempted by FAAAA whenever that law expressly refers to rates or has a significant impact on them). Conversely, a state law will not be preempted if it affects federal goals "in only a tenuous, remote, or peripheral…manner." *Dan's City*, 133 S. Ct. at 1778 (*quoting Morales*, 504 U.S. at 390); *S.C. Johnson & Son, Inc. v. Transport Corp. of America, Inc.*, 697 F.3d 544, 550 (7th Cir. 2012) (discussing *Morales* and its lesson that preemption is not "a simple all-or-nothing question").

## B. Application

BeavEx can therefore show preemption is warranted either by pointing to an explicit reference to rates, routes, or services of motor carriers in the language of the IWPCA or by showing the IWPCA will have a significant economic effect upon them. *See United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 609 (7th Cir. 2000). Neither the Supreme Court nor the Seventh Circuit has ever held that a state employee compensation statute is preempted by either the ADA or the FAAAA. Moreover, nearly all of the cases relied upon by BeavEx in its memorandum in support of its motion involve laws and provisions either directly aimed at airline and motor carriers or directly related to airline or motor carrier activity. *See generally Rowe*, 552

U.S. at 367 (law regulated the delivery of tobacco to customers within the state); *Morales*, 504 U.S. at 374 (guidelines contained detailed standards governing the content and format of airline fare advertising); *American Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1048 (9th Cir. 2009) (mandatory concession agreements specifically for drayage trucking services); *Missing Link Jewelers, Inc. v. United Parcel Service, Inc.*, No. 09 C 3539, 2009 WL 5065682 at *1 (N.D. Ill. Dec. 16, 2009) (challenge of late fees assessed). In this case, the IWPCA does not reference motor carriers and therefore has no direct connection to BeavEx's rates, routes, or services. In order to succeed with its preemption defense, BeavEx must demonstrate that the Plaintiffs' claim has a sufficient economic effect on its prices, routes, or services to warrant its preemption. *See Travel All Over the World*, 73 F.3d at 1432 (claim is preempted if *either* the state rule expressly refers to rates, routes, or services, or application of the state's rule would have significant economic effect upon them).

BeavEx contends that, as applied, the IWPCA claim is preempted because "if [drivers] are engaged as employees and given an hourly rate, benefits and mileage, the cost of labor would increase substantially." BeavEx correctly states that the FAAAA may preempt the Plaintiffs' claims even if the "state law's effects on rates, routes or services 'is only indirect.'" *Rowe*, 552 U.S. at 370 (*quoting Morales*, 504 U.S. at 386). However, the FAAAA's preemption provision does not have infinite reach.

BeavEx's argument that the FAAAA preempts an Illinois wage law because it might indirectly impact BeavEx's prices and rates is tantamount to arguing immunity from all state economic regulation. *See Rowe*, 552 U.S. at 375 (FAAAA does not generally preempt state regulation that broadly prohibits certain forms of conduct and affects motor carriers only in their capacity as members of the public); *see also S.C. Johnson*, 697 F.3d at 558 ("Changes to these

background laws will ultimately affect the costs of labor inputs and in turn, the 'price…or service' of the outputs. Yet no one thinks that the ADA or the FAAAA preempts these and the many comparable state laws because their effect on price is too 'remote.' Instead, laws that regulate these inputs operate one or more steps away from the moment at which the firm offers its customer a service for a particular price."); *see, e.g., Difiore v. American Airlines, Inc.*, 646 F.3d 81, 89 (1st Cir. 2011) (state regulation is not preempted wherever it imposes costs on carriers and therefore affects rates because costs "must be made up elsewhere, *i.e.*, other prices raised or charges imposed" as that would effectively exempt carriers from state taxes, state lawsuits, and most state regulation of any consequence).

Without controlling law in this Circuit, the Court looks elsewhere for illustrations and finds the First Circuit's reasoning in *DiFiore* persuasive. A class of skycaps challenged American Airlines' curbside baggage check fee, claiming that it violated the Massachusetts Tip Law. *DiFiore*, 646 F.3d at 81. The statute provided, in pertinent part, that "[n]o employer or other person shall demand…or accept from any…service employee…any payment or deduction from a tip or service charge given to such…service employee…by a patron." *Id.* at 84; Mass. Gen. Laws ch. 149, § 152A(b). In concluding that the Tips Law claim was preempted by the ADA, the court distinguished the Tips Law from other employee compensation laws:

> The dividing line turns on the statutory language "related to a price, route, or service." Importantly, the tips law does more than simply regulate the employment relationship between the skycaps and the airline…the tips law has a *direct connection* to air carrier prices and services and can fairly be said to regulate both. As to the latter, American's conduct in arranging for transportation of bags at curbside into the airline terminal en route to the loading facilities is itself a part of the "service" referred to in the federal statute, and the airline's "price" includes charges for such ancillary services as well as the flight itself.

*Id.* at 87. The court noted that the Supreme Court would be unlikely to free carriers from most conventional common law claims for tort, from prevailing wage laws, and ordinary taxes

applicable to other businesses, even though such measures necessarily affect fares and services. *Id.* Because the Tip law directly regulated how an airline service was performed and how price was displayed, it went beyond regulating the airline as an employer or proprietor. *Id.* at 88.

The IWPCA is easily distinguishable from the Massachusetts Tip Law and instead fits the mold of a "background law." The law applies to all employers and employees in Illinois and lays out guidelines for, among other things, pay periods, deductions from wages, and avenues to pursue in the event of employment disputes. *See generally* 820 ILCS 115. Not only does the law avoid targeting motor carriers, it only applies to the employment relationship between employers and employees in general, therefore operating at least a step away from the point that BeavEx offers services to customers. The IWPCA regulates the operation of the underlying employment relationship which plays a role in setting the market price, like all economic regulation necessarily does. This is not sufficient to support preemption. *See S.C. Johnson*, 697 F.3d at 558. The IWPCA simply standardizes the employment arena within Illinois. Considering its purpose and procedures, the IWPCA affects BeavEx only as a member of the public and the Court finds no evidence that Congress set out to preempt these generic prevailing wage laws.

Moreover, even if the IWPCA were not a "background law" outside the ambit of the FAAAA, BeavEx has failed to demonstrate the significant impact the law would have due to the vagueness with which it describes its potential increased costs. BeavEx's reliance on *Sanchez v. Lasership*, 937 F. Supp.2d 730 (E.D. Va. 2013) exemplifies the absolute dearth of evidentiary support BeavEx has provided regarding a significant impact finding. In *Sanchez*, the court found a Massachusetts wage statute was preempted by the FAAAA because of the impact compliance would have on the defendant's courier prices. *Sanchez*, 937 F. Supp.2d at 747. In support of its

argument, the defendant provided voluminous evidence of actual economic changes that would occur were the Massachusetts wage law enforced:

> Lasership reports that its 2012 operating profit for its Massachusetts operations was $140,000. To offer health insurance to its employee-drivers, Lasership's costs would increase by $193,200 per ear. Providing workers' compensation insurance will cost Lasership up to $11.00 per $100.000 in earnings, ranging from $3,510 to $4,290 per driver each year. Thus, to provide workers' compensation insurance for all seventy of Lasership's current drivers, Lasership would incur costs ranging from $245,700 to $300,000. Additionally, independent contractors pay their own liability insurance, a cost that will be transferred to Lasership if it converts to an employee-based model. That cost alone is $196,000 per year. By the Court's estimation, Lasership's costs would increase by up to $689,200. This figure is nearly five times Lasership's profit margin for 2012.

*Id.* at 747-48.

Here, BeavEx has offered no numerical calculations of the effect enforcement of the IWPCA would have on its business other than a claim that the creation of a human resources department would incur $185,000 per year in labor costs. (Def. Rule 56.1 St. ¶ 33). As a preliminary matter, the relevance of this number to the IWPCA inquiry is unknown as the law imposes no such requirement on an Illinois employer. Even accepting that number as a legitimate incurred cost, BeavEx offers no evidence other than unabashed conclusory statements that compliance with the IWPCA will increase costs. BeavEx claims that if its drivers are engaged as employees and given an hourly rate, benefits, and mileage, its costs of labor would increase substantially.[3] (Def. Rule 56.1 St. ¶ 27). BeavEx offers zero facts in support of this conclusion. It further asserts that converting couriers from independent contractors to employees would dramatically increase its costs, "inescapably affecting its prices, routes and/or services." BeavEx similarly leaves this contention unsubstantiated. In fact, BeavEx's entire argument regarding significant impact is a regurgitation of the conclusory statements offered in the affidavit of

---

[3] The Plaintiffs partially undermine this contention by offering a concrete example. In one week of work in 2011, Plaintiff Daoud received a total pay of $1,202.50 for approximately 66 hours of work. Were he treated as an employee and given minimum wage as required by Illinois law, he would have received a total pay of $651.75.

Sandra Foster, the Senior Vice President for the company, and these opinions do not persuade the Court that summary judgment is proper. *See Diadenko v. Folino*, 741 F.3d 751, 757-58 (7th Cir. 2013) ("summary judgment is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events"); *Stein v. Ashcroft*, 284 F.3d 721, 726 (7th Cir. 2002) (summary judgment requires more than vague, unsupported speculation and generalized allegations).

BeavEx had an opportunity to show the Court its operating profits utilizing its drivers as independent contractors and an estimation of these numbers were the drivers deemed employees. BeavEx could have offered its estimated change in customer rates due to increased costs. Instead, the company appears to attempt to meet its challenge of demonstrating a significant impact by relying on logic alone. Almost all state laws that affect a motor carrier's transportation business will have the kind of logical relation to its prices or services that BeavEx contends here. Wage and hour laws clearly have a logical relation to a carrier's prices and services because they necessarily affect the costs a motor carrier incurs. Laws of this type, however, are not ordinarily subject to preemption. *See Rowe*, 552 U.S. at 375. It is entirely plausible that imposition of the IWPCA will alter BeavEx's costs, but without any evidence whatsoever of what that alteration will constitute, it is impossible for this Court to make a determination of significant impact. Because no evidence has been introduced to confirm BeavEx's argument that the IWPCA will significantly impact its pricing and services, and for the reasons mentioned above, this Court finds that the IWPCA is not preempted by the FAAAA as it applies to BeavEx, and its motion for summary judgment is denied.

**II. Plaintiffs' Motion for Class Certification**

The decision to certify a class action rests within the discretion of the district court. *See Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 471 (7th Cir. 1997). "[T]he party seeking class certification assumes the burden of demonstrating that certification is appropriate." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). Whether a plaintiff has met his burden is measured by the "preponderance of the evidence" standard. *See Messner v. Northshore Univ. Healthsystem*, 669 F.3d 802, 811 (7th Cir. 2012).

A party may pursue its claim on behalf of a class only if it can establish that the four threshold requirements of Federal Rule of Civil Procedure 23 are met: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). Fed. R. Civ.P. 23(a).

If the Plaintiffs meet this initial burden, they must then show that the proposed class satisfies one of the three requirements set forth in Rule 23(b). *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Where, as here, the Plaintiffs seek certification pursuant to Rule 23(b)(3), the Plaintiffs must show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members (predominance), and that a class action is superior to other available methods for fair and efficient adjudication of the controversy (superiority)." Fed. R. Civ.P. 23(b)(3); *see also Messner*, 669 F.3d at 808, 814 n. 5. In addition to the Rule 23 requirements, the Plaintiffs must also provide a workable class

definition by demonstrating that the members of the class are identifiable. *See Oshana*, 472 F.3d at 513.

### A. The Proposed Class

The Plaintiffs seek to certify a class comprising those who provided delivery driver services for BeavEx in Illinois and were not treated as employees. Perhaps realizing that there are certain deficiencies in the definition of the class proposed in the Complaint, the Plaintiffs offer an alternative class definition in their reply in support of their motion for class certification. The class defined in the complaint consists of "all persons who have provided delivery driver services directly to BeavEx in the State of Illinois at any time during the relevant statutory period, who were not treated as employees of BeavEx." (Dkt. No. 34 at ¶ 33).

In their reply in support of their motion for class certification, the Plaintiffs proposed the following alternative class definition: "All delivery drivers who contracted with BeavEx directly to perform deliveries who did so on a full time basis, and who had amounts deducted by BeavEx from their compensation checks." (Dkt. No. 93 at 15).

The Seventh Circuit has not addressed the scope of the Court's discretion to modify a class definition at the certification stage. Although a district court has the authority to modify a class definition at different stages in litigation, *see In re Motorola Securities Litigation*, 644 F.3d 511, 518 (7th Cir. 2011), district courts appear to be split on whether to hold a plaintiff to the class defined in the complaint. *Compare, e.g., Savanna Group, Inc. v. Trynex, Inc.*, No. 10 C 7995, 2013 WL 66181, at *2-3 (N.D. Ill. Jan. 4, 2013) (allowing amendment during certification proceedings and finding it consistent with Rule 23); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 09 C 5601, 2011 WL 4628744, at *2 (N.D. Ill. Sept. 30, 2011) (allowing amendment during certification proceedings); *with Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669,

672 n. 3, 680 n. 10 (N.D. Ill. 1989) ("As the Court observed earlier, the class definition proposed in [plaintiff's] motion for class certification differs from that set forth in her complaint. The Court has certified the class as originally proposed, but [plaintiff] may file an appropriate motion to amend both her complaint and the class definitions we have set forth here..."). In this case, the Court does not need to decide whether the amendment to the class definition is proper because the Plaintiffs fail to meet the standards of Rule 23 under either definition.

### B. The Plaintiffs Satisfy the Numerosity Requirement

Federal Rule of Civil Procedure 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A class consisting of more than 40 members generally satisfies the numerosity requirement of certifying a class action. *See, e.g., Chavez v. Don Stolzner Mason Contractor, Inc.*, 272 F.R.D. 450, 454 (N.D. Ill. 2011); *cf Pruitt v. City of Chicago*, 472 F.3d 925, 926 (7th Cir. 2006). In an interrogatory response, BeavEx stated that during the relevant time period, there have been approximately 825 individuals who have provided courier services for BeavEx. BeavEx does not dispute, and thus concedes, that it would be impracticable to join this number of plaintiffs in the present action. Consequently, the Plaintiffs have met their burden regarding numerosity.

### C. The Plaintiffs Satisfy the Commonality and Typicality Requirements

Federal Rule of Civil Procedure 23(a)(2) requires that "questions of law or fact common to the class" exist. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). "A common nucleus of operative fact is usually enough to satisfy" this requirement. *Id.* Typicality is closely related to commonality. *See id.* at 594. It requires "that the claims or defenses of the representative party be typical of the claims or defenses of the class." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (quoting

*Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000)). This means the claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and…[the] claims are based on the same legal theory." *Oshana*, 472 F.3d at 514 (quoting *Rosario*, 963 F.2d at 1018).

The Plaintiffs have satisfied both the commonality and typicality requirements. Their claim arises from the same course of conduct that gives rise to the claims of the other class members and their claims are based on the same legal theory. Specifically, BeavEx classified the Plaintiffs and all other putative class members as independent contractors instead of employees in alleged violation of the IWPCA. The entire class consists of drivers who provided services to BeavEx subject to "Owner/Operator" agreements which classified them as independent contractors. This type of formulaic behavior is sufficient for a finding of commonality. *See Keele*, 149 F.3d at 594 (commonality is satisfied where defendant engaged in standardized conduct towards members of the proposed class). There are also two common questions for the class: (1) whether the drivers were employees or independent contractors; and (2) whether BeavEx made improper deductions from the drivers' pay.

### D. The Plaintiffs do not Satisfy the Predominance Requirement of Rule 23(b)(3)

The real issue is whether common questions and evidence predominate a claim for employment misclassification under the IWPCA such that it is properly suited to a class action. Federal Rule of Civil Procedure Rule 23(b)(3) requires the Plaintiffs to demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In applying these standards, courts focus on "the substantive elements of plaintiffs' cause of action and inquire into

the proof necessary for the various elements." *Simer v. Rios*, 661 F.2d 655, 672 (7th Cir. 1981).

The Supreme Court has held that "the predominance criterion is far more demanding" than "Rule 23(a)'s commonality requirement." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997).

At its hub, the Plaintiffs' claim focuses on the alleged misclassification of drivers by BeavEx in violation of the IWPCA. The determinant issue for class certification thus becomes whether IWPCA independent contractor analysis can be satisfied by evidence common to the class.

The independent contractor exception to the IWPCA's requirements provides that an individual is not an employee if that individual is someone:

> (1) who has been and will continue to be free from control and direction over the performance of his work, both under his contract of service with his employer and in fact; and (2) who performs work which is either outside the usual course of business or is performed outside all of the places of business of the employer unless the employer is in the business of contracting with third parties for the placement of employees; and (3) who is in an independently established trade, occupation, profession or business.

820 ILCS 115/2. The test is conjunctive, meaning the putative employer must demonstrate each element of the exemption in order to demonstrate that the service provider is an independent contractor. *See Novakovic v. Samutin*, 354 Ill. App.3d 660, 668 (1st Dist. 2004). Because the onus is on the putative employer, the IWPCA creates a near-presumption that a worker is an employee rather than an independent contractor. *See Adams v. Catrambone*, 359 F.3d 858, 864 (7th Cir. 2004).

The Plaintiffs have argued that the second and third prongs of the test may be resolved through common evidence. BeavEx acknowledges that the second prong of the test does not require individualized proof but, on the other hand, maintains that it must be allowed to present individualized evidence regarding the first and third prongs of the independent contractor test. It contends that because the IWPCA specifically requires the fact-finder to go beyond the

owner/operator agreements in this case and consider the actual relationship between the parties "in fact," IWPCA independent contractor analysis is inherently incompatible with a class action. Moreover, BeavEx claims that certifying the class based only on common evidence pertinent to the second prong of the test would be equivalent to a decision on the merits. The Plaintiffs state that to the extent that glossing over the first prong would constitute a decision on the merits, the modern trend is for courts to consider the merits when granting class certification. *See Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001) (a judge may make a preliminary inquiry into the merits under Rule 23).

There is really no dispute that the second prong of the independent contractor test can be satisfied by common evidence. BeavEx has admitted that its sole business is the delivery and pick-up of packages and that the Plaintiffs and putative class members worked as delivery drivers. The problem presents itself when looking at the first and third prongs, specifically, the first prong's requirement of freedom from "control and direction…**in fact**." *See* 820 ILCS 115/2 (emphasis added). Neither the Supreme Court nor any of the Circuits have provided guidance in this department, and the district courts are split on the issue. *Compare In re FedEx Ground Package Sys., Inc. Employment Practices Litig.*, 273 F.R.D. 424, 489 (N.D. In. 2008) ("*In re FedEx I*") (the IWPCA poses questions upon which FedEx must be allowed to present driver-by-driver evidence); *In re FedEx Ground Package Sys., Inc. Employment Practices Litig.*, 273 F.R.D. 516, 523 (N.D. In. 2010) ("*In re FedEx II*") ("Even though the second prong of the [IWPCA] test can be decided on common evidence, a determination that FedEx can't rebut this prong of the test, obviating the need to determine the other two elements, would be a decision on the merits, which is improper at the class certification stage."); *Schwann v. FedEx Ground Package Sys., Inc.*, No. 11-11094-RGS, 2013 WL 1292432, at *3 (D. Ma. Apr. 4, 2013) (the first

and third prongs of a nearly identical Massachusetts independent contractor statute require individualized factual inquiries); *with De Giovanni v. Jani-King Intern., Inc.*, 262 F.R.D. 71, 85 (D. Ma. 2009) (finding that employment classification dispute under Massachusetts independent contractor statute could be resolved by common evidence); *Martins v. 3PD, Inc.*, No. 11-11313-DPW, 2013 WL 1320454 at *6 (D. Ma. Mar. 28, 2013) (all three prongs of Massachusetts independent contractor statute could be resolved through common evidence).

The Court finds the reasoning in both *In re Fedex* actions to be persuasive and directly on point. The *In re FedEx* court dealt with the same independent contractor test at issue here and this Court agrees with its conclusion. In the multi-district litigation *In re FedEx*, a group of Illinois plaintiffs asserted a claim for a violation of the IWPCA, among other things. *In re FedEx II*, 273 F.R.D. at 520. Specifically, the plaintiffs challenged FedEx's practice of labeling its delivery drivers as independent contractors instead of employees. *In re FedEx I*, 273 F.R.D. at 434. The plaintiffs contended that because FedEx maintained a categorical policy of classifying its drivers as independent contractors, a class action was appropriate because common evidence could resolve all claims. *Id.*

The court disagreed, finding that the IWPCA "seems to contemplate that even when the 'employment' agreement vests enough control in the hiring party to create an employment relationship, the inquiry still must extend into the parties' extracontractual relationship." *Id.* at 489. Because the IWPCA broadens the scope of relevant evidence by placing the burden on the hiring party, that party must be able to present individualized evidence of each worker. *Id.* In conclusion, the court held that the effect of the contracts entered into did not predominate over the individual circumstances. *Id.* at 490.

The Plaintiffs here are requesting the same thing that was refused in *In re FedEx*. First, although the Plaintiffs are correct in stating that an inquiry into the merits may be made at the class certification stage, merits questions may be considered only to the extent that they are necessary. *See Amgen, Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013); *see also Messner*, 669 F.3d at 811 (a district court should not turn class certification proceedings into a dress rehearsal for a trial on the merits). Yet this is precisely what the Court would be doing were it to ignore the first prong of the independent contractor test's requirement of freedom from control "in fact." It is irrelevant that common evidence will show that BeavEx is unable to satisfy the second prong of the test. *See In re FedEx II*, 273 F.R.D. at 523 ("a determination that FedEx can't rebut this prong of the test, obviating the need to determine the other two elements, would be a decision on the merits, which is improper at the class certification stage"). At the class certification stage, the Court must look at the IWPCA test in its entirety to determine if common evidence will predominate the resolution of its analysis. It is not enough that the second prong can be decided utilizing common evidence when the first prong so clearly requires a factual inquiry into the circumstances of each driver. *See Carpetland U.S.A., Inc. v. Illinois Dep't of Employment Security*, 201 Ill.2d 351, 374-383 (2002) (listing 25 factors to examine whether direction or control exists beyond the contract under the same test used for the Unemployment Insurance Act). Because a finding of independent contractor status requires the Court to examine each prong of the IWPCA test, including a requirement to probe beyond the Operating Agreements in this case and into the actual practicing relationship between the parties, BeavEx must be given the opportunity to rebut the control factor by presenting individualized evidence pertaining to each driver, even if it will ultimately fail under the second prong.

Moreover, the disparity in the testimony found in the parties' respective declarations of numerous past and present drivers supports BeavEx's contention that differing factual backgrounds will be found throughout the class. In their depositions, the Plaintiffs stated that BeavEx does not permit drivers to take breaks, run personal errands, or even stop to use a bathroom during routes. On the contrary, declarations filed by other drivers include statements evidencing that personal breaks and errands could be completed during a route as long as the delivery was completed within the timeframe agreed to. Also regarding control "in fact," the Plaintiffs stated that they did not engage in any other work during the time they provided delivery services for BeavEx. Other drivers stated that they currently perform courier services for other companies in addition to BeavEx. There are similar disparities regarding the ability to negotiate price terms for routes, required cell phone usage, and ability to turn down on-demand work. These variations in details concerning the control BeavEx maintained over the putative class members supports the notion that individual facts and evidence are abound in an analysis under the IWPCA independent contractor test.

At the class certification stage, the Court must examine the IWPCA test in its entirety. Failure to acknowledge the individualized inquiry required by the first prong because the second prong can be decided through common facts would be the same as ruling on the merits. Since there is no way to employ generalized proof to prove control "in fact," or lack thereof, under the first prong of the IWPCA test, the Plaintiffs have failed to meet their burden under Rule 23(b)(3) because common facts do not predominate. Accordingly, the motion for class certification is denied.

### III. The Plaintiffs' Motion for Summary Judgment

Although the motion for class certification is denied, the summary judgment motion as to the named Plaintiffs is ripe and they are entitled to a ruling on their claim without additional delay. Finding no disputed issue of material fact that the Plaintiffs were working within the usual course and place of business of BeavEx when making deliveries, the Court grants the named Plaintiffs' partial motion for summary judgment on their IWPCA claim.

#### A. Employment Misclassification

The Court integrates the common undisputed facts from above and in so doing, views the facts in the light most favorable to BeavEx. *See McCann v. Iroquois Memorial Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (in determining whether an issue of material fact exists, the court views the facts in the light most favorable to the non-moving party, and draws all reasonable inferences in that party's favor). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment…against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The IWPCA defines an "employee" as "any individual permitted to work by an employer in an occupation," but excludes any individual:

> (1) who has been and will continue to be free from control and direction over the performance of his work, both under his contract of service with his employer and in fact; and (2) who performs work which is either outside the usual course of business or is performed outside all of the places of business of the employer unless the employer is in the business of contracting with third parties for the placement of employees; and (3) who is in an independently established trade, occupation, profession or business.

820 ILCS §115/2. The alleged employer must demonstrate the exemption's applicability and each element of the exemption must be present for the service provider to be an independent

contractor. *See Adams*, 359 F.3d at 864 (IWPCA independent contractor test is written in the conjunctive); *see also Novakovic*, 354 Ill. App.3d at 668 (same).

In this case, the Court need only address the second prong of the test: whether the Plaintiffs' performed work outside the usual course of BeavEx's business or outside of BeavEx's places of business. BeavEx can satisfy this prong through evidence of either condition. *See id.* at 669. Regarding the first condition, "when considering the employer's usual course of business, Illinois courts focus on whether the individual performs services that are necessary to the business of the employer or merely incidental." *Carpetland*, 201 Ill.2d at 386. The second condition is not limited only to its own home offices, but can extend to any location where workers regularly represent an employer's interest. *Id.* at 389-91.

The Plaintiffs have argued that it is undisputed that they were operating within the usual course of BeavEx's business because BeavEx is a delivery service and the Plaintiffs were working as delivery drivers. Further, the Plaintiffs contend that they performed work within BeavEx's places of business, maintaining that the delivery routes were BeavEx's places of business. BeavEx's only argument is that ruling on the Plaintiffs' motion for summary judgment before deciding on class certification violates the rule against one-way intervention.

The rule against one-way intervention "bars potential class members from waiting on the sidelines to see how the lawsuit turns out and, if a judgment for the class is entered, intervening to take advantage of the judgment." *Amati v. City of Woodstock*, 176 F.3d 952, 957 (7th Cir. 1999). The apprehension is that a "victory by the plaintiff [on the merits] would be followed by an opportunity for other members of the class to intervene and claim the spoils; a loss by the plaintiff would not bind the other members of the class." *Premier Elec. Const. Co. v. National Elec. Contractors Ass'n, Inc.*, 814 F.2d 358, 362 (7th Cir. 1987). Clearly, BeavEx's concerns are

assuaged here as the Court has denied the Plaintiffs' motion for class certification in this very opinion. *See Amati*, 176 F.3d at 957. ("The rule does not appear to be addressed to the case in which class certification is denied").

Additionally, there is no problem with the Court determining both of Plaintiffs' motions at the same time. Although normally, the issue of class certification should be resolved before determination of an action on the merits, *see Thomas v. UBS AG*, 706 F.3d 846, 849 (7th Cir. 2013), cases exist where it is appropriate to defer class certification until after a decision on the merits. *See Chavez v. Illinois State Police*, 251 F.3d 612, 629 (7th Cir. 2001). In this case, the Plaintiffs filed both their motions for class certification and partial summary judgment at the same time. In the interest of judicial efficiency, the Court has simply examined both concurrently, and this is not a unique stance. *See generally, Smith v. Short Term Loans*, No. 99 C 1288, 2001 WL 127303 (N.D. Ill. Feb. 14, 2001) (court looked at nine different motions at the same time, including cross-motions for summary judgment and a motion to certify class); *Allen v. Aronson Furniture Co.*, 971 F. Supp. 1259 (N.D. Ill. 1997) (court ruled on cross-motions for summary judgment before class certification); *Hakim v. Accenture U.S. Pension Plan*, 735 F. Supp.2d 939 (N.D. Ill. 2010) (cross-motions for summary judgment made class certification motion moot).

BeavEx only contended that ruling on the Plaintiffs' motion for summary judgment before ruling on the motion for class certification would be improper. This issue is now resolved. BeavEx chose not to respond to the merits of the Plaintiffs' motion for summary judgment in any way, therefore waiving any argument against the merits it may have had. *See Roe-Midgett v. CC Services, Inc.*, 512 F.3d 865, 876 (7th Cir. 2008) (arguments not made in responsive briefs to summary judgment are waived); *Laborers' Intern. Union of North America v. Caruso*, 197 F.3d

1195, 1197 (7th Cir. 1999) (arguments not presented to the district court in response to summary judgment motions are waived); *see, e.g., De v. City of Chicago*, 912 F. Supp.2d 709, 733 (N.D. Ill. 2012) (if party opposing summary judgment fails to present reasons why summary judgment should not be entered, the claim is waived and the nonmoving party will lose the motion) (citing *Reklau v. Merch. Nat'l Corp.*, 808 F.2d 628, 630 n. 4 (7th Cir. 1986)). Nevertheless, the Court will provide a brief synopsis of the appropriateness of summary judgment in this case. *See King v. Schieferdecker*, 498 Fed. Appx. 576, 580 (7th Cir. 2012) (courts can consider materials not cited by either party in a ruling on summary judgment).

Any potential argument BeavEx could have made would fail even if properly stated. BeavEx is a same-day delivery service company, and its primary function is to provide motor vehicle transportation of property for compensation. The Plaintiffs were courier drivers who performed delivery services for BeavEx. It is undisputed and beyond doubt that BeavEx's delivery drivers performed work in the usual course of BeavEx's package and delivery business. *See AFM Messenger Service, Inc. v. Department of Employment Sec.*, 198 Ill.2d 380, 406 (2001) (courier companies' usual course of business is delivery of packages); *Chicago Messenger Service v. Jordan*, 356 Ill. App.3d 101, 107 (1st Dist. 2005) (undisputed that couriers performed services that were integral to and within the usual course of courier company's business).

Moreover, the Plaintiffs were providing this work within BeavEx's places of business. BeavEx does not dispute that the Plaintiffs reported to BeavEx office locations to pick up route manifests and materials. Even if the time spent at these office locations was minor, a courier company's "place of business" is not limited to its own offices. *See AFM*, 315 Ill. App.3d at 315 (the roadways were the usual place of business for a package delivery company); *Jordan*, 356 Ill. App.3d at 115 (couriers represent the company's interests when making deliveries); *see, e.g., In*

*re FedEx Ground Package System, Inc. Employment Practices Litig.*, No. MDL-1700, 2010 WL 2243246 (N.D. In. May 28, 2010) (roadways, delivery routes, sales territories, and customer premises constitute a company's place of business when the worker is representing the company's interest).

BeavEx provides package pick-up and delivery services through a network of drivers. BeavEx required the Plaintiffs to provide these services for BeavEx which were necessary to its business of courier services. The Plaintiffs had to wear apparel with the BeavEx logo and a BeavEx identification badge when performing deliveries. Although the Plaintiffs' supplied their own vehicles, they were required to have the BeavEx name, logo, phone number, and Illinois Commerce Commission number on both sides. The Plaintiffs were required to use scanners and record logs when delivering packages, and BeavEx would occasionally perform audits on the Plaintiffs to ensure they were complying with the rules and policies. Even if the audits were not applied uniformly, BeavEx's policies underlying the audits show that BeavEx attempts to maintain its image and reputation by reviewing its drivers' performance while on route.

Even when the Court considers all the facts in BeavEx's favor, BeavEx cannot satisfy its burden of showing that the Plaintiffs' work was outside all the places of its business. The undisputed evidence shows that BeavEx drivers represent BeavEx's interest when delivering and picking up packages. As such, BeavEx is unable to show that the Plaintiffs were independent contractors under the IWPCA test. Because there is no genuine issue of material fact that BeavEx is unable to demonstrate the second prong of the exemption under the IWPCA, the Court grants the named Plaintiffs' motion for summary judgment as to Count II of their complaint.

## CONCLUSION

For the foregoing reasons, BeavEx's motion for summary judgment and the Plaintiffs' motion for class certification are denied, and the Plaintiffs' motion for partial summary judgment is granted as to the named plaintiffs.

_Virginia M. Kendall_

Date: March 31, 2014