**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MEGAN BAASE KEPHART and OSAMA DAOUD, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 12-cv-7843 |
| v. | **Judge Virginia M. Kendall** |
| BEAVEX INC., | Magistrate Judge Mary M. Rowland |
| Defendant. | |

**PLAINTIFFS' AGREED MOTION FOR
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

### I.      INTRODUCTION.

Plaintiffs seek preliminary approval of a class action settlement agreement entered into between the parties in this action following more than five years of litigation.  This case has been brought as a Rule 23 Class Action on behalf of persons who provided delivery services within Illinois for Defendant BeavEx, Inc.  Plaintiffs' primary claim is that they were misclassified as independent contractors pursuant to the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/1 et seq.  The named Plaintiffs further allege that as a result of this misclassification, BeavEx violated the IWPCA by making unlawful deductions from its drivers' wages.  Plaintiffs also brought claims under the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. 105/1 et seq., and Illinois common law for unjust enrichment, but these claims have never been certified.

On June 14, 2016, this Court granted Plaintiffs' motion for class certification under Fed. R. Civ. P. 23 for their IWPCA claims.  (ECF No. 170.)  The parties subsequently stipulated to the following class definition: "All persons who contracted with BeavEx, Inc. to perform

deliveries in the State of Illinois between October 1, 2002 to the present and who did so personally and regularly during the time they contracted with BeavEx." (ECF Nos. 175, 175-1, and 176.) Notice of the class action was mailed to the 736 class members. To date, six class members have opted out of the case.[1]

The proposed settlement creates a $702,000 settlement fund. The settlement is non-reversionary and will provide class members who file claims in the settlement with substantial compensation. Class Claimants will receive shares based on the amount of time they worked for BeavEx, thus, the drivers who worked for BeavEx the longest, and who incurred the larger share of deductions, will receive more in the settlement.

As set forth below, Class Counsel believes that the settlement is fair and reasonable under the circumstances, especially in light of the risks of non-recovery if this matter was litigated through a final judgment, and the financial risk of non-payment if BeavEx were saddled with a large verdict. Plaintiffs, therefore, request that the Court issue an Order 1) granting preliminary approval of the class action settlement; 2) approving the proposed Notice and Claim Forms; 3) authorizing Class Counsel to initiate the Notice and Claims process set forth in the parties' Settlement Agreement as described below; and 4) setting a date for a hearing on final approval of the class action settlement for 90 days after the date of preliminary approval.

## II.    BACKGROUND.

It would be an understatement to say that this case has been extensively litigated. Plaintiffs filed their complaint on October 1, 2012 alleging that Defendant's actions violated the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 et seq. for failure to pay minimum wage

---

[1] Thomas Costello, formerly a named plaintiff, was one of the class members who decided to opt out. (ECF. No. 174.)

and overtime (Count I); the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1 et seq. for making unlawful deductions from Plaintiffs' compensation (Count II), and constituted unjust enrichment (Count III). The parties engaged in substantial paper and deposition discovery. Plaintiffs filed a motion to certify a class action on October 5, 2012, on the IWPCA claim. ECF No. 5. On October 29, 2012, Defendant filed its answer, denying Plaintiffs' allegations and including a counterclaim for indemnification. On November 19, 2012, Plaintiffs filed a motion to dismiss Defendant's counterclaim. On January 1, 2013, Plaintiffs filed an Amended Complaint. On February 1, 2013, Defendant filed its Answer to the Amended Complaint. On May 17, 2013, the Court denied Plaintiffs' motion to dismiss Defendant's counterclaim. On July 9, 2013, Plaintiffs filed their Answer to Defendant's counterclaim.

On August 13, 2013, Defendant filed a motion for summary judgment arguing that Plaintiffs' claims were preempted by the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"). 49 U.S.C. § 13102(14). On September 23, 2013, Plaintiffs filed a partial motion for summary judgment on whether BeavEx misclassified them as independent contractors. Furthermore, on September 23, 2013, Plaintiffs filed a motion for class certification. These motions were all fully briefed.

On March 31, 2014, the Court denied Defendant's motion for summary judgment, granted Plaintiffs' partial motion for summary judgment, and denied Plaintiffs' motion for class certification. On April 14, 2014, Plaintiffs filed a motion for reconsideration of the Court's ruling on class certification. On April 28, 2014, Defendant filed a motion for reconsideration of the Court's rulings on summary judgment. On October 29, 2014, the Court denied the parties' motions for reconsideration.

On November 11, 2014, the parties filed a joint motion for certification of interlocutory appeals pursuant to 28 U.S.C. § 1292(b) and Fed. R. Civ. P. 23(f). On December 1, 2014, the Court granted the parties' joint motion. On January 15, 2015, the Seventh Circuit granted Defendant's petition for interlocutory review and on January 2015, the Seventh Circuit consolidated the parties two appeals.

On March 6, 2015, Defendant filed its opening brief on FAAAA preemption in the Seventh Circuit. On April 21, 2015, Plaintiffs filed their opening brief on class certification and opposition to Defendant's brief on FAAAA preemption. On June 8, 2015, Defendant filed its brief in opposition to Plaintiffs' brief on class certification and a reply in support of its own brief on FAAAA preemption. On June 26, 2015, Plaintiffs filed a reply brief in support of class certification. Oral argument was held in the Seventh Circuit on September 18, 2015. On January 19, 2016, the Seventh Circuit issued its opinion affirming the District Court's ruling that FAAAA preemption did not apply to Plaintiffs' claims and vacating the District Court's denial of class certification.

On April 19, 2016, Defendant filed a petition for writ of certiorari with the United States Supreme Court. On October 3, 2016, the Supreme Court reviewed the petition and requested a brief from the United States Solicitor General. On June 26, 2017, the Supreme Court denied the petition. On July 11, 2017, the Court scheduled the case for trial to begin on November 27, 2017. (ECF No. 191.) The trial date was later re-set to begin on April 9, 2018.

After further briefing in the District Court, on June 14, 2016, the District Court certified a class of BeavEx couriers and denied BeavEx's motion to stay the case pending the Supreme Court's ruling on BeavEx's petition for certiorari review. On July 29, 2016, class notice was

4

sent to approximately 736 couriers. Six couriers opted out of the Action. The total number of class members is approximately 730.

On October 18, 2017, the parties attended a full-day mediation with experienced wage and hour mediator Michael Leech. The case did not settle at the mediation, and the parties continued to prepare for trial. However, the parties also continued to negotiate with the assistance of Mediator Leech and recently reached a proposed settlement of this case. The total amount of the proposed settlement is $702,000.

### III. TERMS OF THE FINANCIAL SETTLEMENT.

The total settlement amount is $702,000. The class has 730 members. Given the circumstances of the case, including substantial concerns regarding BeavEx's financial status should a large verdict ensue, Plaintiffs' counsel believe that the financial settlement will provide reasonable compensation to the class for the alleged wrongs they have suffered.

The settlement is non-reversionary, meaning that any unclaimed shares will be redistributed to the claiming class members. Settlement checks that are not cashed, after claims are made, will be paid to a *cy pres* beneficiary, Public Citizen.

The parties propose that, if approved by the Court, the Class Settlement Fund of $702,000 shall be used to:

1.      Pay incentive payments in the amount of $15,000 each to Megan Baase Kephart and Osama Daoud, the two individuals who served as named Plaintiffs and actively participated throughout the litigation, for a total of $30,000.

2.      Pay an award to Class Counsel not to exceed one-third of the Class Settlement Fund for attorney's fees, litigation and mediation expenses and costs of administering the

settlement for a total of $234,000. The remainder of the Class Settlement Fund after payments under Sections 1 and 2 will be referred to as the "Net Settlement Fund."

3.      From the Net Settlement Fund, totaling $438,000, pay the claims of the class members who submit timely and valid Claim Forms ("Class Claimants").

### IV.    PROCEDURES AND FORMULA FOR DISTRIBUTION OF THE CLASS FUNDS.

If this Court grants preliminary approval to the proposed settlement, the settlement administration will be conducted by Class Counsel's law firm, which maintains an in-house staff and electronic systems designed for that purpose. This will save thousands of dollars by not utilizing a class action administration firm. A notice will be sent to each class member informing them of the settlement, how they can share in the distribution, and of their right to participate in the settlement, object to the settlement, or to opt out of the settlement. See Proposed Notice Form (attached as Ex. A). The notice will also inform individuals that this settlement will settle all IWPCA claims that they may have had against BeavEx up until the date of execution of the settlement.

The notice will be sent out at the last known address and email address (if known by BeavEx) to all individuals who, previously were sent notice of the class action and did not opt out. Email and telephone follow ups will be pursued as necessary.

Class members will also receive a simple claim form, which must be signed by the class member to take part in the settlement. See Proposed Claim Form (attached as Ex. B). The notice will request that class members return their claim forms within sixty (60) days.

If notices and claim forms come back as undeliverable at the address provided, Plaintiffs' counsel will, using software they have purchased, attempt to obtain more accurate addresses for those individuals, and will resend the notices. Although the notice will inform individuals that

6

they must return their claim form within sixty (60) days to be eligible for a share, in fact, the parties agree that any individual who files a valid claim form up until one week before the money is set to be distributed will be eligible to receive a full share.

Further, the settlement is non-reversionary – meaning that to the extent that there are unclaimed shares or class members who are not ultimately found, any remaining amounts will be redistributed to those class members making claims. Further, should there be some unpaid money as a result of checks not being cashed, such remaining funds will go to a *cy pres* beneficiary, Public Citizen.

BeavEx will pay the Settlement Fund of $702,000 as follows: (a) within thirty (30) days of the Court's approval of this settlement becoming final, BeavEx shall make an initial deposit of $270,000 into a bank account created by Class Counsel for purposes of the administration and disbursement of the Settlement Fund; and (b) BeavEx shall deposit $18,000 per month for twenty-four (24) months thereafter into the bank account. BeavEx agrees to entry of a judgment in the full amount of all remaining installment payments, plus reasonable attorneys' fees and costs incurred enforcing the Settlement Agreement, if it is late on any installment payment and it does not cure within ten (10) days of receiving notice.

Plaintiffs asserted that, as a result their alleged misclassification, they were forced by BeavEx to pay back some of their earned wages through deductions and expenses that should have been borne by their employers and that they were not paid for all hours worked. Deductions were taken from drivers' pay for equipment, various insurances, and administrative fees on a weekly basis, in an average amount of about $40 per week. Each driver incurred the same approximate amount of weekly deductions. With that in mind, the Net Settlement Fund will be allocated to Qualified Class Members as follows:

The Net Settlement Fund ($438,000) will be distributed to the participating class members based on their actual length of service on a pro rata basis as follows.  BeavEx will provide Class Counsel with data listing the dates of employment for each class member.  Class members will then receive a pro rata share based on their days of service during the class period.

Approximately fourteen (14) days after the initial payment of the Settlement Fund is deposited, and after pro rata attorney's fees and incentive payments are deducted, Class Claimants who submitted timely claim forms will receive their pro rata share of the initial payment.

A second distribution will be made twelve (12) months later as follows:  Class Claimants shall receive a pro rata share of the funds deposited by BeavEx after the initial payment, after pro rata attorneys' fees and incentive payments are deducted.

A third, and final, distribution will be made 14 days after the final payment is made into the Settlement Fund (approximately 24 months after the initial payment).  Class Claimants shall receive a pro rata share of the funds deposited by BeavEx after the second distribution, after pro rata attorneys' fees and incentive payments are deducted.

 Finally, Plaintiffs propose that the attorneys' fees, costs, and incentive payments be distributed on a pro rata basis concurrent with the distributions to Class Claimants.

## V.      THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND THUS, SHOULD BE PRELIMINARILY APPROVED.

### A.      The Legal Standard for Preliminary Settlement Approval.

It is well-established that courts favor settlements of lawsuits over continued litigation. See, e.g., Isby v. Bayh, 75 F.3d 1191, 1196 (7th Cir. 1996); Air Line Stewards and Stewardesses Ass'n, Local 550 v. Trans World Airlines, Inc., 630 F.2d 1164, 1166 (7th Cir. 1980) (providing that federal courts look with great favor upon the voluntary resolution of litigation through

settlement); <u>Armstrong v. Bd. of Sch. Directors of City of Milwaukee</u>, 616 F.2d 305, 313 (7th Cir. 1980) <u>overruled on other grounds</u> ("In the class action context in particular, 'there is an overriding public interest in favor of settlement.'") (quoting <u>Cotton v. Hinton</u>, 559 F.2d 1326, 1331 (5th Cir. 1977); <u>In re Warfarin Sodium Antitrust Litig.</u>, 391 F.3d 516, 535 (3d Cir. 2004) ("an overriding public interest in settling class action litigation, and it should therefore be encouraged").

Pursuant to Fed. R. Civ. P. 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Before granting approval, a court should weigh whether "the proposed settlement is lawful, fair, reasonable, and adequate." <u>Isby</u>, 75 F.3d at 1196. Courts should "not focus on individual components of the settlements, but rather view them in their entirety in evaluating their fairness" and should consider the facts "in the light most favorable to the settlement." <u>Id.</u> at 1199 (quoting <u>EEOC v. Hiram Walker & Sons, Inc.</u>, 768 F.2d 884, 889 (7th Cir. 1985)). Furthermore, the decision of whether to approve a proposed settlement is left to the discretion of this Court. <u>Wong v. Accretive Health, Inc.</u>, 773 F.3d 859, 862 (7th Cir. 2014).

Ultimately, when conducting a fairness determination, the relevant factors include: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." <u>Id.</u> at 863-64 (quoting <u>Gautreaux v. Pierce</u>, 690 F.2d 616, 631 (7th Cir.1982). "The most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." <u>Id.</u> (quoting <u>In re Gen.</u>

9

Motors Corp. Engine Interchange Litig., 594 F.2d 1106, 1132 n. 44 (7th Cir.1979)).  Generally,

"when sufficient discovery has been provided and the parties have bargained at arms-length,

there is a presumption in favor of the settlement." City P'ship Co. v. Atl. Acquisition Ltd. P'ship,

100 F.3d 1041, 1043 (1st Cir. 1996) (citation omitted).  Moreover, "[t]he assistance of an

experienced mediator in the settlement process confirms that the settlement is non-collusive."

Burkholder v. City of Ft. Wayne, 750 F.Supp.2d 990, 995 (N.D. Ind. 2010 (quoting Carter v.

Anderson Merchandisers, LP, 2010 WL 144067, at *6 (C.D. Cal. Jan. 7, 2010)).  Finally, an

employer's financial condition may also be considered in determining whether a settlement is

fair, adequate, and reasonable. See e.g., Redman v. RadioShack Corp., 768 F.3d 622, 632 (7th

Cir. 2014); Lucas v. Vee Pak, Inc., 2017 WL 6733688, at *9-11 (N.D. Ill. Dec. 20, 2017)

(finding proposed class settlement amount reasonable given defendant's inability to withstand a

large judgment); Kleen Prods. LLC v. Int'l Paper Co., 2017 WL 5247928, at *2 (N.D. Ill. Oct.

17, 2017) (defendants' ability to pay considered in determining reasonableness of class

settlement).  "The financial condition of the defendant in class action settlement is a legitimate –

if not entirely pragmatic – consideration."  Swift v. Direct Buy, Inc., 2013 WL 5770633, at *7

(N.D. Ind. Oct. 24, 2013) (citing In re Wireless Tel. Fed. Cost Recovery Fees Litig., 396 F.3d

922, 932 (8th Cir. 2005)).

Review of a proposed class settlement involves two steps: preliminary approval and a

final "fairness hearing."  Manual for Complex Litigation (Fourth) § 13.14.  At the preliminary

approval stage, "the court's task is merely to 'determine whether the proposed settlement is

within the range of possible approval,' not to conduct a full-fledged inquiry into whether the

settlement meets Rule 23(e)'s standards."  Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc., 2011

WL 3290302, at *6 (N.D. Ill. July 26, 2011) (quoting Armstrong v. Bd. of Sch. Dirs. of City of

Milwaukee, 616 F.2d 305, 314 (7th Cir.1980) (noting that at the final fairness hearing, the court will "adduce all information necessary to enable [it] intelligently to rule on whether the proposed settlement is fair, reasonable, and adequate") (citing In re Prudential Sec. Inc. Ltd. P'ships Litig., 163 F.R.D. 200, 209 (S.D.N.Y.1995) (preliminary approval determines whether the settlement is "possibly fair, reasonable, and adequate")). Thus, "courts in this district have performed 'a more summary version' of the final fairness inquiry at the preliminary approval stage." Am. Int'l Grp., Inc., 2011 WL 3290302, at *6 (citing AT & T Mobility Wireless Data Servs. Sales Litig., 270 F.R.D. 330, 346 (N.D. Ill.2010); Kessler v. Am. Resorts Int'l's Holiday Network, Ltd., 2007 WL 4105204, at *5 (N.D. Ill. Nov.14, 2007) ("Although this [fair, reasonable, and adequate] standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase."). The court's role at the preliminary approval stage is not "resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." E.E.O.C. v. Hiram Walker & Sons, Inc., 768 F.2d 884, 889 (7th Cir.1985). Indeed, Courts are "entitled to rely heavily on the opinion of competent counsel." Gautreaux, 690 F.2d at 634 (7th Cir.1982).

Once a settlement is preliminarily approved by the Court, notice of the proposed settlement and the fairness hearing is provided to class members. At the subsequent fairness hearing, class members may formally object to the proposed settlement.

**B.    The Proposed Settlement Satisfies the Requirements for Preliminary Approval.**

Plaintiffs allege that they and the members of the class were misclassified as independent contractors under the IWPCA, and that as a result BeavEx took unlawful deductions from their pay. This Court ultimately agreed that Plaintiffs were employees of BeavEx, as that term is

defined by the IWPCA (ECF No. 95).  However, Plaintiffs still must prove that the deductions

taken from the class members' pay were unlawful under the IWPCA.

Although Plaintiffs believe that they have strong and meritorious claims, several concerns

have led Class Counsel to conclude that a settlement with BeavEx is preferable to the significant

risks for the class in pursuing this matter through trial.  For one, BeavEx will argue that even

though it took deductions from class members' pay, the deductions do not violate the IWPCA.

The IWPCA authorizes deductions by employers from an employee's wages if such deductions

are "to the benefit of the employee."  820 Ill. Comp. Stat. 115/9(2).  The court in Bell v. Bimbo

Foods Bakeries Distrib., Inc., No. 11 C 03343, 2013 WL 6253450, at *4 (N.D. Ill. Dec. 3, 2013),

interpreted this language as allowing deductions for the expense of equipment required by the

employer because "it is not the expense that must be for [the employee's] benefit, but the

deduction itself," and it was more convenient for the employer to deduct the amounts from the

employee's pay rather than require the employee to repay the amounts from his own funds.

BeavEx has argued that deductions taken from drivers' pay are similarly to their benefit.  If

BeavEx is correct, which Plaintiffs strongly deny, the class would not be entitled to any

damages.

Additionally, the IWPCA, 820 Ill. Comp. Stat. 115/9(4), also allows for deductions if

they are "made with the express written consent of the employee, given freely at the time the

deduction is made."  Moreover, in 2014, approximately two years after this case was filed, the

Illinois Department of Labor enacted a regulation that provides an employee's written

"agreement shall be considered to be given freely at the time the deduction is made" when "a

deduction is to continue over a period of time and the written agreement provides for that period

of time, provides for the same amount of deduction each period and allows for voluntary

withdrawal for the deduction." 56 Ill. Admin. Code 300.720(b). See also Osorio v. The Tile Shop, LLC, No. 15 C 15, 2016 WL 316941, at *4-5 (N.D. Ill. Jan. 27, 2016). BeavEx required class members to sign a contract purporting to authorize the deductions taken by BeavEx. While Plaintiffs do not believe BeavEx's contracts meet the requirements outlined by the Illinois Department of Labor's regulation, there is a risk that even if the deductions are found to be not for the benefit of the drivers, the Court will hold that the class members authorized these deductions, and thus have greatly reduced their damages.

Finally, in preparation for the mediation, BeavEx provided Class Counsel with detailed information regarding its financial condition.[2] Class Counsel analyzed the financial information (with the assistance of a certified public accountant) to ascertain BeavEx's financial condition and ability to satisfy a large judgment. Based on all financial information provided by BeavEx, it is likely that BeavEx could not satisfy a large judgment of the size sought by Plaintiffs in this case. Thus, the class faced a risk of losing on the merits coupled with the risk of being unable to recover their damages even if they were successful on the merits. Accordingly, despite litigating this case for over five years, Class Counsel has determined that, based on these factors, the best interests of the class are served by obtaining substantial compensation now rather than face the risk of being unable to recover a larger judgment at this action's conclusion.

Based on these considerations, Class Counsel strongly believes that the settlement negotiated here is fair, reasonable, and adequate. Moreover, in reaching this conclusion, Class Counsel have spent considerable time performing calculations and compiling Excel spreadsheets both during the full-day mediation with a highly-respected mediator and in direct consultation by

---

[2] BeavEx previously filed its financial information under seal. (ECF No. 210).

themselves. Class Counsel calculates that the total amount of deductions taken by BeavEx from the class members' pay is approximately $3.8 million. While certainly less than Plaintiffs had hoped for at the outset of this litigation, the $702,000 settlement is still substantial. Given the potential risks associated with proceeding with trial, the settlement is reasonable.

Furthermore, the procedural background of this matter supports a finding that the settlement was negotiated at arm's length by experienced counsel concerning *bona fide* disputes between their clients with respect to liability and the amounts due to members of the class. The case presented numerous and vigorously contested issues related to the classification of the class members and whether certain legal defenses provided BeavEx with a complete or partial defense to liability. As detailed previously, the parties have engaged in extensive litigation in this Court since this lawsuit was filed in 2012. The parties conducted extensive formal discovery, including lengthy written discovery and conducting seven depositions. Moreover, the parties filed cross-motions for summary judgment (along with motions to reconsider), Plaintiffs filed a motion for class certification, and the case was appealed to the Seventh Circuit and U.S. Supreme Court. Finally, after the U.S. Supreme Court denied BeavEx's petition for certiorari and this Court scheduled the case for trial, the parties engaged in a full-day mediation with a respected mediator, which involved extensive additional informal discovery.

Additionally, Plaintiffs are represented by highly experienced and competent counsel who have litigated numerous wage and hour cases aggressively and successfully. Notably, co-lead counsel, Attorney Harold Lichten, has litigated, tried, and settled numerous class action wage-and-hour cases across the country is a recognized expert in labor and employment law.[3]

---

[3] Among other things, Mr. Lichten successfully argued the landmark cases on the Massachusetts Independent Contractor Law, Somers v. Converged Access, Inc., 454 Mass. 582 (2009) and the New

14

Furthermore, Mr. Lichten's law firm, Lichten & Liss-Riordan, P.C., are pioneers in the field of worker misclassification and has litigated and settled numerous class action matters filed in the federal courts.[4] Those settlements contained very similar terms to the proposed settlement in this case, including the same provision for attorneys' fees and the same basic method for notifying class members and distributing the settlement proceeds.

Attorneys Marc Siegel and Bradley Manewith also have extensive experience with class wage and hour litigation. They have both represented workers in over 100 wage and hour cases and were appointed as class counsel by federal courts in numerous class action settlements.[5]

---

Jersey wage law, Hargrove v. Sleepy's, LLC, 106 A.3d 449, 453 (N.J. 2015). Both cases dealt with the same ABC employment relationship test included in the IWPCA.

[4] The class cases they have litigated and settled in federal court include: Taveras v. XPO Last Mile, Inc., C.A. No. 15-1550 (D. Conn. Aug. 11, 2017) (Doc. # 123); Martins v. 3PD, Inc., C.A. No. 11-11313 (D. Mass. March 2, 2016) (Doc. # 209); Badia v. Homedeliverylink, Inc. et al., C.A. No. 12-06920-WJM (D.N.J. Sept. 25, 2015) (Doc. # 99); Anderson v. HomeDeliveryAmerica.com, et al., C.A. No. 11-cv-10313 (D. Mass. Dec. 17, 2014) (Doc. #108); Mansingh v. Exel Direct, Inc., C.A. No. 12-11661 (D. Mass. May 7, 2014); Kiely v. TripAdvisor, LLC, C.A. No. 08-11284 (D. Mass. Aug. 8, 2011) (Doc. #52); Apana et al. v. Fairmont Hotels, Inc., C.A. No. 08-cv-00528 (D. Hawaii 2011); Carreiro, et al. v. Huntleigh Corp., et al., C.A. No. 08-10819 (D. Mass.); Elienberg v. RCN, C.A. No. 09-10912 (D. Mass.); Maliniski et al. v. Starwood Hotels, C.A. No. 08-11859 (D. Mass.); Monahan et al. v. WHM LLC d/b/a LXR Luxury Resorts and Boca Resorts, Inc. d/b/a Boca Raton Resort & Club, C.A. No. 09-CV-80198 (S.D. Fla.); Hayes et al. v. Aramark Sports Service LLC, C.A. No. 08-10700 (D. Mass.); Niles et al. v. Ruth's Chris Steak House, C.A. No. 08-07700 (S.D.N.Y.); Mitchell et al. v. PrimeFlight Aviation Services, C.A. No. 08-cv-10629 (D. Mass.); Barreda et al. v. Prospect Airport Svcs., C.A. No. 08-323 (N.D. Ill.); Miller et al. v. SBLI, C.A. No. 08-10267 (D. Mass.).

[5] Attorneys Siegel and Manewith litigated and were appointed class counsel in the following class action settlements in federal court: Stivers v. Illinois State Toll Highway Authority, No. 15-cv-09030 (N.D. Ill.); Brandon v. 3PD, Inc., No. 13-CV-03745 (N.D. Ill.); Cardenas et al. v. John B. Sanfilippo & Son, Inc., No. 10-CV-01354 (N.D Ill.); Barreda, et al. v. Prospect Airport Servs., Inc., No. 08 C 03239 (N.D. Ill.); Sanchez, et al. v. Stampede Meat, Inc., et al., No. 02 C 5452 (N.D. Ill.); Singer v. Lockport Beef, LLC, et al., No. 14-cv-0670 (N.D. Ill.); Trevino v. Renaissance Roofing, Inc., et al., No. 12-cv-00024 (N.D. Ill.); Leon v. El-Milagro, Inc., No. 11-cv-04255 (N.D. Ill.); Cardenas, et al. v. John B. Sanfilippo & Son, Inc., No. 10-cv-01354 (N.D. Ill.).

Class Counsel are thus well aware of the law in this area, and their experience has provided the plaintiff class with a high degree of expertise, which contributed to a favorable resolution of their claims against BeavEx. Furthermore, Mr. Lichten's firm is also experienced in the mechanics of class settlement administration. In the more than 30 other cases he has settled as class actions, there have been thousands of class members overall requiring active engagement in processing claims from these settlements and distributing settlement proceeds.

Moreover, the proposed settlement agreement between Plaintiffs and BeavEx (attached as Ex. C), demonstrates that the settlements were negotiated at arm's length by experienced counsel concerning *bona fide* disputes between their clients with respect to liability and the amounts due to members of the class.

In light of the arm's-length negotiation in this case, which was reached with the assistance of a top neutral mediator, and Class Counsel's prior experience and expertise in this area of law, the Court should find this proposed settlement to be fair, reasonable, and adequate and should issue preliminary approval. See Armstrong, 616 F.2d at 314 (settlement agreement need only fall within reasonable range of possible approval to be preliminarily approved).

## VI. THE PROPOSED SERVICE AWARDS ARE FAIR AND REASONABLE.

The settlement also proposes incentive payments of up to $15,000 for each of the named plaintiffs. The proposed incentive payments are fair and reasonable, given that named plaintiffs initiated the lawsuit on behalf of their co-workers and because it was through their initiative that this recovery was obtained. Ms. Kephart and Mr. Daoud provided invaluable assistance to Class Counsel throughout the five plus years this litigation has been pending, including providing documents, responding to discovery, submitting to lengthy depositions, and attending the mediation.

16

Courts have widely recognized that incentive payments serve an important function in promoting enforcement of state and federal law by private individuals, while also encouraging class action settlements. See Cook v. Niedert, 142 F.3d1004, 1017 (7th Cir. 1998) (approving incentive award of $25,000 to the named plaintiff); In re Relafen Antitrust Litig., 231 F.R.D. 52, 82 (D. Mass. 2005); In re Compact Disc Min. Advertised Price Antitrust Litig., 292, F. Supp. 2d 184, 189 (D. Maine 2003); Sheppard v. Consol. Edison Co. of N.Y., Inc., 2002 WL 2003206, at *5-6 (E.D.N.Y. 20020 (collecting cases approving incentive payments). A 2006 study found that while the average incentive payment approved in class action settlements was around $15,000, awards in wage cases were generally higher. See Scovil v. FedEx Ground Package Sys., Inc., 2014 WL 1057079, at *6 (D. Me. Mar. 14, 2014) (citing Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 UCLA L. Rev. 1303, 1308 (2006)). The court in Scovil found that recent awards in employment cases reached $30,000 and higher. Id. (citing Cook, 142 F.3d at 1016 ($25,000 incentive award approved for one named plaintiff)). See also Brandon, No. 13-CV-03745, slip op (N.D. Ill. Jan. 26, 2016) (approving service awards of $20,000 to two plaintiffs, and $10,000 to one plaintiff); Zolkos v. Scriptfleet, Inc., No. 12 Civ. 8230(GF), 2015 WL 4275540, at *3 (N.D. Ill. July 13, 2015) (awarding $148,000 in incentive payments ranging from $3,500 to $10,000 per plaintiff); Taveras v. XPO Last Mile, Inc., C.A. No. 15-1550 (D. Mass. Aug. 11, 2017) (Doc. # 123) (approving incentive payment of $20,000 for named plaintiff);; Martins v. 3PD, Inc., No. 11-11313 (Doc. # 211) (D. Mass. July 22, 2016) (approving total of $60,000 in incentive payments - -$20,000 to each of three named plaintiffs); Torres v. Gristede's Operating Corp., 2010 WL 5507892, at *8 (S.D.N.Y. Dec.21, 2010) aff'd, 519 F. App'x 1 (2d Cir.2013) (finding reasonable service awards of $15,000 to each of 15 named plaintiffs); Badia v. Homedeliverylink, Inc. et al.,

C.A. No. 12-06920-WJM, (Sept. 25, 2015 D.N.J.) (Doc. # 99) (approving incentive payments totaling $97,000. Including $15,000 each to six named plaintiffs); <u>Sewell v. Bovis Lend Lease, Inc.</u>, 2012 WL 1320124, at * 14–15 (S.D.N.Y. Apr. 16, 2012) (finding reasonable and approving service awards of $15,000 and $10,000 in wage and hour action); <u>Reyes v. Altamarea Group, LLC</u>, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving service awards of $15,000 to three class representatives and $5,000 to fourth class representative in restaurant case challenging tip and minimum wage policies); <u>Willix v. Healthfirst, Inc.</u>, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving service awards of $30,000, $15,000, and $7,500); <u>Torres v. Gristede's Operating Corp.</u>, 2010 WL 5507892, at *8 (S.D.N.Y. Dec. 21, 2010) (finding reasonable service awards of $15,000 to each of 15 named plaintiffs); <u>Khait v. Whirlpool Corp.</u>, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (approving service awards of $15,000 and $10,000, respectively, in wage and hour class action); <u>In re Janney Montgomery Scott LLC Fin. Consultant Litig.</u>, 2009 WL 2137224, *12 (E.D. Pa. July 16, 2009) (approving $20,000 payments to three named plaintiffs in complex FLSA)). As one court observed: "[Enhancement] awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." <u>Frank v. Eastman Kodak Co.</u>, 228 F.R.D. 174, 187 (W.D.N.Y. 2005)

Given Plaintiffs' significant contributions to this matter, the fact that they are the only two class representatives and faced potential retaliation from BeavEx and/or future employers, the proposed service awards are fair and reasonable.

## VII.   THE REQUESTED ATTORNEYS' FEES AND COSTS ARE FAIR, REASONABLE, AND SUPPORTED BY APPLICABLE PRECEDENT.

In the motion for final approval, Class Counsel will request an award of attorneys' fees and costs which will provide them with a net of $234,000, one-third of the total settlement.  This award would cover all costs incurred to date by Class Counsel, as well as the significant costs Class Counsel will incur in the next several years administering the settlement fund, calculating actual share distributions, taking care of all mailings and filings, etc.  To date, Class Counsel have paid for the costs associated with six depositions, half of the mediation fees, sending out class notice, and fees related to filing and investigating this case.  Class Counsel will incur additional expenses related to mailings and other costs associated with administering the class fund.  Further, Plaintiffs' ability to administer the class settlement without hiring a class action settlement administrator will result in a substantial savings to the settlement fund, which can then be more properly used to pay distribution shares to class members.

The proposed notice of settlement will inform class members that one-third of the settlement proceeds would be used to pay for all attorneys' fees and costs based on the fact that Class Counsel accepted this case on a fully contingent arrangement with no payment of fees or expenses by any client.  Further, the named Plaintiffs signed Retainer Agreements providing that counsel would receive one-third of the proceeds received in any judgment or settlement.  Courts generally favor awarding fees from a common fund based upon a percentage of the fund.  As the Supreme Court has explained:

> This Court has recognized consistently that a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to reasonable attorneys' fee from the fund as a whole . . . jurisdiction over the fund involved in the litigation allows the Court to prevent . . . inequity by assessing attorneys' fees against the entire fund thus spreading fees proportionally among those benefited by the suit.

19

Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980). Indeed, a one-third attorneys' fee award in a common fund case has been consistently approved as reasonable in wage and hour cases in the Northern District of Illinois. See, e.g., McCue v. MB Fin., Inc., No. 15 cv 988, 2015 WL 4522564, at *3 (N.D. Ill. July 23, 2015) (finding that the Seventh Circuit's decision in Pierce v. Visteon Corp., 2015 WL 3985985 (7th Cir. July 1, 2015) does not preclude a percentage of the common fund recovery in the settlement context and awarding 1/3 of common fund as attorneys' fees); Zolkos, 2015 WL 4275540, at *3 (N.D. Ill. July 13, 2015) (awarding 1/3 of the common fund as attorneys' fees); Acosta, et al. vs. Scott Labor, et al., Case No. 05 C 2518 (D.E. 120) (awarding 33 1/3% of common fund in overtime case); Yon v. Positive Connections, Inc., Case No. 04 C 2680 (D.E. 69) (awarding 33% of the common fund in overtime case); Sanchez v. Stampede Meat, Inc., Case No 02 C 5452 (D.E. 70) (awarding 33 1/3% of common fund in overtime case); Gonzalez v. Labor Network, Case No. 05 C 4864 (D.E. 137) (awarding 33 1/3% of common fund in overtime case); Perugachi v. Valet Parking Service, Inc., Case No. 04 C 1783 (D.E. 60) (awarding 33% of the common fund in overtime case); Alejandro v. Surestaff, Inc., Case No. 04 C 2889 (D.E. 33) (awarding 33% of the common fund in overtime case); Aguirre et al v. Central Continental Bakery, Inc., Case No. 05 C 2013 (D.E. 54) (awarding 33% of the common fund in overtime case); Herrera v. Chicago Mattress, Inc., Case No. 06 C 1872 (D.E. 49) (awarding 33% of the common fund in overtime case); Flores v. Jorge Arteaga Corp., Case No. 05 C 2057 (D.E. 53) (awarding 33 1/3% of common fund in minimum wage and overtime case); Ortegon v. Staffing Network, Inc., Case No. 06 CH 12679, Order dated July 24, 2009, (awarding 33% of common fund in IDTLSA and overtime case); Perezchica, et al. vs. Eastco International Corp., et al, Case No. 07 CH 04726, Order dated March 18, 2008 (awarding 33 1/3% of common fund in overtime case). Given this precedent, approving a one-third recovery

20

for attorneys' fees and costs in this class action case, which includes all costs and expenses, is reasonable. This is especially true where class counsel will be absorbing the costs of administering the settlement by performing this function themselves, reducing potential costs.

Indeed, a one-third attorneys' fee award in a common fund case has been consistently approved as reasonable in wage and hour cases in the Northern District of Illinois. See, e.g., Stivers v. Illinois State Toll Highway Authority, No. 15-cv-09030, slip op. at 3 (N.D. Ill. Jan. 18, 2017) (awarding 1/3 of the common fund as attorneys' fees); Brandon v. 3PD, Inc., No. 13-CV-03745, slip op. at 1 (N.D. Ill. Jan. 26, 2016) (awarding 1/3 of the common fund as attorneys' fees); McCue v. MB Fin., Inc., No. 15 cv 988, 2015 WL 4522564, at *3 (N.D. Ill. July 23, 2015) (finding that the Seventh Circuit's decision in Pierce v. Visteon Corp., 2015 WL 3985985 (7th Cir. July 1, 2015) does not preclude a percentage of the common fund recovery in the settlement context and awarding 1/3 of common fund as attorneys' fees); Zolkos, 2015 WL 4275540, at *3 (N.D. Ill. July 13, 2015) (awarding 1/3 of the common fund as attorneys' fees); Singer v. Lockport Beef, LLC, No. 14-cv-0670, slip op at 4 (N.D. Ill. Nov. 5, 2014) (awarding 1/3 of the common fund as attorneys' fees); Trevino v. Renaissance Roofing, Inc., No. 12-cv-00024, slip op. at 3 (N.D. Ill. Dec. 19, 2012) (awarding attorneys' fees and costs in an amount equal to 1/3 of the common fund); Leon v. El Milagro, Inc., No. 11-cv-04255, slip op. at 3 (N.D. Ill Dec. 6, 2012) (awarding attorneys' fees and costs in an amount equal to 1/3 of the common fund); Cardenas v. John B. Sanfilippo & Son, Inc., No. 10-cv-01354, slip op. at 1 (N.D. Ill. Sept. 8, 2011) (awarding 1/3 of the common fund as attorneys' fees); Barreda v. Prospect Airport Servs., Inc., No. 08 C 03239, slip op. at 1 (N.D. Ill. Oct. 6, 2009) (awarding 1/3 of the common fund as attorneys' fees); and Sanchez v. Stampede Meat, Inc., No. 02 C 5452, slip op. at 3 (N.D. Ill. April 4, 2006) (awarding attorneys' fees and costs in an amount equal to 1/3 of the common

21

fund).  Given this precedent and practice in the Northern District of Illinois of consistently

approving one-third recovery for attorneys' fees in similar class action wage and hour cases, a

one-third recovery here to Class Counsel is reasonable.

### VIII.   CONCLUSION.

For the reasons set forth herein, Plaintiffs respectfully request that this Court grant

preliminary approval of this proposed settlement, sign the proposed order attached as Exhibit D,

and allow Plaintiffs to send class members the proposed notices and claim forms attached hereto

as Exhibit A and B.

Dated: February 19, 2018                                  Respectfully submitted,

Marc Siegel, #6238100                                     MEGAN BAASE KEPHART and
Bradley Manewith, #06280535                               OSAMA DAOUD, individually and on
Siegel & Dolan Ltd.                                       behalf of all others similarly situated,
150 North Wacker Drive, Suite 1100
Chicago, IL  60606                                        By: /s/ Bradley Manewith_____
                                                              Attorney for Plaintiffs
Harold L. Lichten, BBO# 549689
Benjamin J. Weber, BBO# 673736
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116

22

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a copy of the attached, **Plaintiffs'
Agreed Motion for Preliminary Approval of Class Action Settlement**, was sent to all counsel
of record by electronically filing the same with the Clerk of the U.S. District Court of the
Northern District of Illinois on February 19, 2018.


/s/ Bradley Manewith
Bradley Manewith