**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MEGAN BAASE KEPHART and OSAMA DAOUD, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 12-cv-7843 |
| v. | **Judge Virginia M. Kendall** |
| BEAVEX INC., | Magistrate Judge Mary M. Rowland |
| Defendant. | |

**PLAINTIFFS' AGREED MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

### I.      INTRODUCTION

The Court granted preliminary approval of the proposed class action settlement on February 26, 2018.  Plaintiffs now seek the Court's final approval of the proposed class action settlement.  The Court should grant final approval because, as discussed herein, the class action settlement is fair and reasonable under the circumstances described below because the settlement claimants are set to receive substantial compensation and there is a substantial risk of non-recovery if this matter were litigated through final judgment.  After six years of litigation and a full-day mediation, the parties agreed on a proposed settlement of $702,000.  A primary reason that this case is being resolved on this basis is that after performing due diligence, including retaining a consulting accountant, Class Counsel determined that a reduced settlement with a payout over two years was necessary for BeavEx to meet its ongoing financial obligations and to resolve this case in a manner which would allow it to remain competitive.

Of the 717 class members who were sent notice, 316 have filed claims and none have filed an objection to the Settlement.  Thus, approximately 44% of the class members have filed

1

claims, which in Class Counsel's experience is already a favorable rate of return for a case that has lasted this long. Additionally, it is expected that at least some additional class members will file claims as checks are sent out because the settlement is to be distributed in three payments over the next 24 months (because of BeavEx's financial condition) and class members may file claims up until the final distribution. Moreover, each claimant is set to receive substantial compensation, with many receiving several thousand dollars, and the average payout being approximately $1,500. Overall, the settlement provides a reasonable result for the class given the circumstances. Plaintiffs hereby request final approval of this class action settlement, which is set for a final approval on June 4, 2018.

## II.     RELEVANT BACKGROUND

It would be an understatement to say that this case has been extensively litigated. Plaintiffs filed their complaint on October 1, 2012 alleging that Defendant's actions violated the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 et seq. for failure to pay minimum wage and overtime (Count I); the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1 et seq. for making unlawful deductions from Plaintiffs' compensation (Count II), and constituted unjust enrichment (Count III). The parties engaged in substantial paper and deposition discovery. Plaintiffs filed a motion to certify a class action on October 5, 2012, on the IWPCA claim. ECF No. 5. On October 29, 2012, Defendant filed its answer, including a counterclaim for indemnification. On November 19, 2012, Plaintiffs filed a motion to dismiss Defendant's counterclaim. On January 1, 2013, Plaintiffs filed an Amended Complaint. On February 1, 2013, Defendant filed its Answer to the Amended Complaint. On May 17, 2013, the Court denied Plaintiffs' motion to dismiss Defendant's counterclaim. On July 9, 2013, Plaintiffs filed their Answer to Defendant's counterclaim.

On August 13, 2013, Defendant filed a motion for summary judgment arguing that Plaintiffs' claims were preempted by the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"). 49 U.S.C. § 13102(14).  On September 23, 2013, Plaintiffs filed a partial motion for summary judgment on whether BeavEx misclassified them as independent contractors.  Furthermore, on September 23, 2013, Plaintiffs' filed a motion for class certification.  These motions were all fully briefed.

On March 31, 2014, the Court denied Defendant's motion for summary judgment, granted Plaintiffs' partial motion for summary judgment, and denied Plaintiffs' motion for class certification.  On April 14, 2014, Plaintiffs filed a motion for reconsideration of the Court's ruling on class certification.  On April 28, 2014, Defendant filed a motion for reconsideration of the Court's rulings on summary judgment.  On October 29, 2014, the Court denied the parties' motions for reconsideration.

On November 11, 2014, the parties filed a joint motion for certification of interlocutory appeals pursuant to 28 U.S.C. § 1292(b) and Fed. R. Civ. P. 23(f).  On December 1, 2014, the Court granted the parties' joint motion.  On January 15, 2015, the Seventh Circuit granted Defendant's petition for interlocutory review and consolidated the parties two appeals on January 2015.  See Costello v. BeavEx, Appeal Nos. 15-1109, 15-1110.

The parties filed briefs on FAAAA preemption and class certification.  Oral argument was held in the Seventh Circuit on September 18, 2015.  On January 19, 2016, the Seventh Circuit issued its opinion affirming the District Court's ruling that FAAAA preemption did not apply to Plaintiffs' claims and vacating the District Court's denial of class certification.

On April 19, 2016, Defendant filed a petition for writ of certiorari with the United States Supreme Court.  See BeavEx., Inc. v. Costello, No. 15-1305.  On October 3, 2016, the Supreme

Court reviewed the petition and requested a brief from the United States Solicitor General.  On June 26, 2017, the Supreme Court denied BeavEx's petition.

On July 11, 2017, this Court scheduled the case for trial to begin on November 27, 2017. ECF No. 191.  The trial date was later reset to begin on April 9, 2018.

After further briefing in the District Court, on June 14, 2016, the District Court certified a class of BeavEx couriers on their claims under the IWPCA and denied BeavEx's motion to stay the case pending the Supreme Court's ruling on BeavEx's petition for certiorari review.  On July 29, 2016, class notice was sent to approximately 723 couriers.  Six couriers opted out of the Action.  The total number of class members is approximately 717.

On October 18, 2017, the parties attended a full-day mediation with experienced wage and hour mediator Michael Leech.  Prior to the mediation, BeavEx supplied Class Counsel with detailed financial information, which Class Counsel reviewed using an outside accountant.  The case did not settle at the mediation, and the parties continued to prepare for trial.  However, the parties also continued to negotiate with the assistance of Mediator Leech and ultimately reached a proposed settlement for $702,000.  A copy of the fully-executed settlement agreement is attached as Exhibit A.  On February 19, 2018, Plaintiffs filed an agreed motion for preliminary approval and for authorization to send notice and claim forms to the class members.  ECF No. 219.  The parties appeared before the Court on February 26, 2018 and the Court approved the motion for preliminary approval.  ECF No. 221, 222.

On March 15, 2018, BeavEx provided Class Counsel with an updated address list for the 717 class members, including phone numbers.  See Decl. of Shae Cleary at ¶ 3 (attached as Ex. B).  On March 19, 2018, counsel sent notice and claim forms to each of the 717 class members

by first class mail.  Id.  A copy of the Court-approved notice and claim forms that were distributed to the class members is attached as Ex. C.

Of those initial notices, 212 were returned as undeliverable.  Cleary Decl. at ¶ 4.  Using the phone numbers provided by BeavEx and people-search software purchased by class counsel, counsel was able to mail notice and claim forms to 187 of those 212 contractors.  Id.  As a result, 706 of the class members received the mailed notice, for an undeliverable rate of 3%.  Id.

As of April 13, 2018, Class Counsel had received only 100 claims.  Id. at ¶ 5.  Reminder notices were then sent out by mail to 630 of the class members on April 17, 2018.  Id. at ¶ 6.  Out of those reminder notices, only 20 were returned as undeliverable.  Id.  Class Counsel continued attempting to contact class members.

Class Counsel's efforts greatly improved the claims rate.  As of today, 316 of the class members, 44% of the class, have filed claims and no class members have submitted objections. Moreover, the BeavEx drivers with more in potential damages were more likely to file claims, thus, over the claimants suffered over 50% of the potential damages in this case.

Furthermore, the range of shares to be awarded to the class demonstrates that the class will receive substantial compensation that is proportional to the amount of damages they suffered.  To demonstrate this, Class Counsel have calculated each contractor's share as it stands today and the shares if 20 percent of the remaining class members file claims.  See Distribution List (attached as Ex. D).  If no one else files a claim, the average recovery for claimants will be approximately $1,490 with a range from a high of $7,275 for a contractor who worked for BeavEx for more than seven years to a low share of $75 for a contractor who worked for BeavEx

in Illinois for only one month.[1]  Id.  Class Counsel, however, expect based on prior experience that some additional claimants will come forward.  As discussed below, the settlement will be distributed in three installments over the next 24 months.  Class members will be able to file claims up until the final distribution, so that class members will have an additional period to claim their share of the settlement.  Accordingly, if an additional 20 percent of the class (or around 50 additional class members) file claims (which they are allowed to do under the settlement agreement before the final payment), the average share will be approximately $1,250, with a range of approximately $50 to $6,063.  Id.  Moreover, since this settlement is non-reversionary, the remaining funds will be distributed to the claimants on a pro rata basis.

As described herein, this settlement is a fair resolution of the claims the Plaintiffs have raised against BeavEx and Plaintiffs request that this Court approve the settlement pursuant to Fed. R. Civ. P. 23(e).  As discussed in more detail below, despite considerable risks to recovery, after payment of fees and incentive payments, Class Counsel will distribute, pursuant to the formula described below, $438,000 to class claimants.  The proposed settlement is, therefore, fair and reasonable, and should receive final approval from the Court.

## II.    PROPOSED DISTRIBUTION OF SETTLEMENT FUNDS.

The settlement funds, totaling $702,000, will be apportioned as follows:

1.    Pay incentive payments in the amount of $15,000 each to Megan Baase Kephart and Osama Daoud, the two individuals who served as named Plaintiffs and actively participated throughout the litigation, for a total of $30,000;

2.    Pay an award to Class Counsel not to exceed one-third of the Class Settlement Fund for attorney's fees, litigation and mediation expenses and costs of administering the settlement for a total of $234,000. The remainder of the Class Settlement Fund after payments under Sections 1 and 2 will be referred to as the "Net Settlement Fund;" and

---

[1]    Contractors who worked for less than a month were allotted minimum shares of $50 each.

3.  From the Net Settlement Fund, totaling $438,000, pay the claims of the class members who submit timely and valid Claim Forms ("Class Claimants").

BeavEx will pay the Settlement Fund of $702,000 as follows: (a) within thirty (30) days of the Court's approval of this settlement becoming final, BeavEx shall make an initial deposit of $270,000 into a bank account created by Class Counsel for purposes of the administration and disbursement of the Settlement Fund; and (b) BeavEx shall deposit $18,000 per month for twenty-four (24) months thereafter into the bank account. BeavEx agrees to entry of a judgment in the full amount of all remaining installment payments, plus reasonable attorneys' fees and costs incurred enforcing the Settlement Agreement, if it is late on any installment payment and it does not cure within ten (10) days of receiving notice.

Plaintiffs asserted that, as a result of their alleged misclassification, they were forced by BeavEx to pay back some of their earned wages through deductions and expenses that should have been borne by their employers and that they were not paid for all hours worked. Deductions were taken from drivers' pay for equipment, various insurances, and administrative fees on a weekly basis, in an average amount of about $40 per week. Each driver incurred the same approximate amount of weekly deductions. With that in mind, BeavEx provided Class Counsel with data listing the dates of service for each class member.  The Net Settlement Fund ($438,000) will be distributed to the participating class members based on their actual length of service on a pro rata basis.

Accordingly, Class Counsel divided the Net Settlement Amount by the total number of Settlement Days for all Class Claimants in order to establish a dollar amount per Settlement Day (the "Daily Amount").  Each Class Claimant's Individual Settlement Amount shall be calculated by multiplying the Class Claimant's number of Settlement Days by the Daily Amount.

The attached spreadsheet lists the class members (with names redacted) who filed claims and the approximate amount that they would receive using this formula if there were no additional claims.  See Distribution List.  If, as expected after the first rounds of checks are distributed, additional claims are filed, the amount claimants will receive will be reduced slightly.  As can be seen from the list, each distribution is related to the amount of damages suffered by the class members. The average contractor payment is expected to be around $1,490. Class members will receive their pro rata shares as follows:

Approximately fourteen (14) days after the initial payment of the Settlement Fund is deposited, and after pro rata attorney's fees and incentive payments are deducted, Class Claimants who submitted timely claim forms will receive their pro rata share of the initial payment.

A second distribution will be made twelve (12) months later as follows: Class Claimants shall receive a pro rata share of the funds deposited by BeavEx after the initial payment, after pro rata attorneys' fees and incentive payments are deducted.

A third, and final, distribution will be made fourteen (14) days after the final payment is made into the Settlement Fund (approximately 24 months after the initial payment). Class Claimants shall receive a pro rata share of the funds deposited by BeavEx after the second distribution, after pro rata attorneys' fees and incentive payments are deducted.

## III.   THE CLASS RECEIVED THE BEST NOTICE PRACTICABLE UNDER THE CIRCUMSTANCES OF THE PROPOSED SETTLEMENT.

### A.   Dissemination of Class Notice

As described above, Class Counsel went to considerable effort to ensure that as many class members as possible received notice of the class action settlement.  See Cleary Decl. Following this Court's order granting preliminary approval of the settlement, BeavEx provided

Plaintiffs with updated mailing addresses for the approximately 717 class members in this case based on its corporate records. Cleary Decl. ¶ 3. On March 19, 2018, Class Counsel sent notice of the class settlement by first class mail to the last know addresses of the class members. While 212 notices were returned as undeliverable, Class Counsel was able to find updated mailing addresses for 187 class members though the use of people-search software purchased by Class Counsel. As a result, the undeliverable rate was a mere three percent. Id. at ¶ 4.

As of April 13, 2018, however, only 100 contractors had filed claims. Id. at ¶ 5. Class Counsel sought and obtained an updated list of class members' addresses from BeavEx. Class Counsel then sent out a second round of notices by mail on April 17, 2018. Id. at ¶ 6. Following Class Counsel's efforts, the number of claims rose sharply. Id. at ¶¶ 7-8.

As of the filing of this motion, 316 class members have filed claims. This represents a return rate of approximately 44%. Moreover, the shares for these contractors represent more than 50% of the total fund available. However, because this a non-reversionary settlement, the entire fund will be distributed to the claimants on a pro rata basis.

In addition, because the settlement will be paid in three distributions -- one approximately 45 days, one 12 months later, and a final payment approximately two years after final approval -- additional class members are expected to come forward after the first and second distribution is made. Under the agreement if class members file claims after the first and second payments go out, they will still be eligible to receive their share of the remaining settlement funds. This will further increase the number of claimants. Moreover, since the settlement is non-reversionary, any remaining funds will be redistributed among the class members on a pro rata basis.

### B.     Notice to the Class was more than Adequate.

Constitutional due process and Federal Rule of Civil Procedure 23(c)(2)(B) require that absent class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Schulte v. Fifth Third Bank, 805 F. Supp. 2d 560, 595 (N.D. Ill. 2011).  "What comprises the best notice possible depends on various elements, including the size of the class, whether the class members can be easily identified, and the probability notice will reach the intended audience."  Id. (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 166–67 (1974) (considering the size, ease of identifying the class, and probability of receiving notice).  Where lists of class members and their addresses are readily ascertainable, courts generally prefer individual notice. Eisen, at 173.  As several courts have held, "[n]otice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members."  Serio v. Wachovia Sec., LLC, 2009 WL 900167, at *8 (D.N.J. Mar. 31, 2009) (quoting In re Merrill Lynch TYCO Research Sec. Litig., 249 F.R.D. 124, 133 (S.D.N.Y.2008)).

Class Counsel worked diligently to deliver notice to the class by first-class mail.  Cleary Decl. at ¶ 4-7.  Notice by first-class mail generally satisfies the notice requirements of both Fed. R. Civ. P. 23 and the due process clause.  Zimmer Paper Products, Inc. v. Berger & Montague, P.C., 758 F.2d 86, 90 (3d Cir. 1985) (citing Eisen, 417 U.S. at 173–77; Walsh v. Great Atlantic & Pacific Tea Co., 726 F.2d 956, 962–64 (3d Cir.1983); Cayuga Indian National v. Carey, 89 F.R.D. 627, 632–33 (N.D.N.Y.1981)); Parks v. Portnoff Law Associates, 243 F. Supp. 2d 244, 249-50 (E.D. Pa. 2003) (notices mailed to class members' last known address held reasonable

10

and adequate).  Moreover, when issuing notice by mail it is not necessary for every class member to receive actual notice, but only that the method of notice be "'reasonably calculated, under all the circumstances, to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  In re Integra Realty Res., Inc., 354 F.3d 1246, 1260 (10th Cir. 2004) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)).  See also In re AT & T Mobility Wireless Data Servs. Sales Tax Litig., 789 F. Supp. 2d 935, 968 (N.D. Ill. 2011) ("Due process does not require that every class member receive notice."); Carlough v. Amchem. Prod., Inc., 158 F.R.D. 314, 325 (E.D.Pa.1993) ("Receipt of actual notice by all class members is required by neither Rule 23 nor the Constitution."); In re Nat'l Life Ins. Co., 247 F.Supp.2d 486, 492 (D.Vt.2002) ("An alleged failure to receive notice will not sustain a due process challenge as long as reasonable measures were taken to provide individualized notice to identifiable class members.").  In Serio, for example, the court held that sending out notices via direct mail, where class members' notices that came back as undeliverable received follow-up notices if an updated address was found on a United States Postal Service database constituted "the best practicable method for providing notice."  2009 WL 900167, at *8.  That is precisely what happened here.  While 212 of the initial 717 notices came back as undeliverable, Class Counsel was able to find mailing addresses for 187 of those class members.  Cleary Decl. at ¶ 4.  After using people-search software to find class members, Class Counsel was able to mail reminder notices to all but 20 of the 717 class members.  Id. at ¶ 6.

Indeed, the high number of claims filed is further proof of the adequacy of the notice issued by Class Counsel. See Schulte v. Fifth Third Bank, 805 F. Supp. 2d 560, 596-97 (N.D. Ill. 2011) (citing In re Agent Orange Product Liability Litigation MDL No. 381, 818 F.2d 145, 169 (2d Cir.1987) (fact that large number of claims were filed by class members "suggest[ed] that no

practical problem exist[ed] as to the adequacy of the notice").  Moreover, the low undeliverable rate of three percent is well within the range that courts have found acceptable.  See In re Integra, 354 F.3d at 1260 (notice held reasonable and adequate even though 1,455 of the 6,423 claim forms were "not actually received"); Grunin v. Int'l House of Pancakes, 513 F.2d 114, 121-22 (8th Cir. 1975) (approving notice where 33 percent of class members not reached by mailing).

Given Class Counsel's substantial efforts to ensure notice of the class action settlement was actually received by as many class members as possible, and in light of the high rate of claims made and the absence of any objections, the dissemination of the notice here was more than adequate.

## IV.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND THEREFORE, SHOULD BE APPROVED.

### A.  The Legal Standard for Final Settlement Approval

It is well-established that courts favor settlements of lawsuits over continued litigation. See, e.g., Isby v. Bayh, 75 F.3d 1191, 1196 (7th Cir. 1996); Air Line Stewards and Stewardesses Ass'n, Local 550 v. Trans World Airlines, Inc., 630 F.2d 1164, 1166 (7th Cir. 1980) (providing that federal courts look with great favor upon the voluntary resolution of litigation through settlement); Armstrong v. Bd. of Sch. Directors of City of Milwaukee, 616 F.2d 305, 313 (7th Cir. 1980) ("In the class action context in particular, 'there is an overriding public interest in favor of settlement.'"); In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004) (noting "an overriding public interest in settling class action litigation" that "should therefore be encouraged").

Pursuant to Fed. R. Civ. P. 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Before granting approval, a court should weigh whether "the proposed settlement is lawful, fair,

reasonable, and adequate." Isby, 75 F.3d at 1196. Courts should "not focus on individual components of the settlements, but rather view them in their entirety in evaluating their fairness" and should consider the facts "in the light most favorable to the settlement." Id. at 1199 (quoting EEOC v. Hiram Walker & Sons, Inc., 768 F.2d 884, 889 (7th Cir. 1985)).

Generally, "when sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement." City P'ship Co. v. Atl. Acquisition Ltd. P'ship, 100 F.3d 1041, 1043 (1st Cir. 1996) (citation omitted). Moreover, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." Burkholder v. City of Ft. Wayne, 750 F.Supp.2d 990, 995 (N.D. Ind. 2010) (quoting Carter v. Anderson Merchandisers, LP, 2010 WL 144067, at *6 (C.D. Cal. Jan. 7, 2010)).

Ultimately, when conducting a fairness determination, the relevant factors include: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." Synfuel Techs., Inc. v. DHL Express (USA), Inc., 463 F.3d 646, 653 (7th Cir.2006) (quoting Isby, 75 F.3d at 1199). A review of these factors shows that this settlement merits approval.

**B.      The Proposed Settlement Meets the Requirements for Final Approval.**

**1.      Plaintiffs' Likelihood of Recovery Balanced Against the Amount of Settlement Favors Final Approval.**

An important factor when evaluating the fairness of a settlement is to weigh the potential maximum recovery of the plaintiffs against the obstacles the plaintiffs may face in recovering their damages. Schulte, 805 F. Supp. 2d at 579 (citing Synfuel, 463 F.3d at 653). The first step

is to "quantify the net expected value of continued litigation to the class." Synfuel, 463 F.3d at 653 (quotation marks omitted). Then, the "next step in determining the fairness of the settlement is to discount the value of the class's claims based on the various defenses available to the defendant." Schulte, 805 F. Supp. 2d at 579 (citing Synfuel, 463 F.3d at 653).

Although Plaintiffs believe that they have strong and meritorious claims, several concerns have led Class Counsel to conclude that a settlement with BeavEx is preferable to the significant risks for the class in pursuing this matter through trial. Using payroll records obtained from a third party, Plaintiffs were able to calculate their total potentially-recoverable deductions at approximately $3 million. BeavEx, however, provided Plaintiffs with financial information which Class Counsel reviewed with an outside accountant.[2] Class Counsel determined that a reduced settlement with a payout over two years was necessary to allow the company to meet its ongoing financial obligations and resolve this case in a manner which would allow BeavEx to remain competitive.

Moreover, BeavEx may still argue that, even though it took deductions from class members' pay, the deductions do not violate the IWPCA. The IWPCA authorizes deductions by employers from an employee's wages if such deductions are "to the benefit of the employee." 820 Ill. Comp. Stat. 115/9(2). BeavEx has argued that deductions taken from drivers' pay are similarly to their benefit. If BeavEx is correct, which Plaintiffs strongly deny, the class would not be entitled to any damages. See Bell v. Bimbo Foods Bakeries Distrib., Inc., 2013 WL 6253450, at *4 (N.D. Ill. Dec. 3, 2013) (holding that deductions for the expense of equipment required by the employer did not violate the IWPCA). Additionally, the IWPCA, 820 Ill. Comp.

---

[2]        BeavEx previously filed its financial information under seal. (ECF No. 210)

Stat. 115/9(4), also allows for deductions if they are "made with the express written consent of the employee, given freely at the time the deduction is made." The Illinois Department of Labor enacted a regulation that provides an employee's written "agreement shall be considered to be given freely at the time the deduction is made" when "a deduction is to continue over a period of time and the written agreement provides for that period of time, provides for the same amount of deduction each period and allows for voluntary withdrawal for the deduction." 56 Ill. Admin. Code 300.720(b). BeavEx required class members to sign a contract purporting to authorize the deductions taken by BeavEx. While Plaintiffs do not believe BeavEx's contracts meet the requirements outlined by the Illinois Department of Labor's regulation, there is a risk that even if the deductions are found to be not for the benefit of the drivers, the Court will hold that the class members authorized these deductions, and thus have greatly reduced their damages.

As a result of the review of financial information relating to BeavEx as well as the uncertainty related to application of the IWPCA to wage deductions in Illinois, the class faced a risk of losing on the merits coupled with the risk of being unable to recover their damages, unless they agreed to accept a reduced amount to be paid in installments. Accordingly, despite litigating this case for over five years, Class Counsel has determined that, based on these factors, the best interests of the class are served by obtaining substantial compensation now rather than face the risk of being unable to recover a larger judgment at this action's conclusion.

Based on these considerations, Class Counsel strongly believes that the settlement negotiated here is fair, reasonable, and adequate. While certainly less than Plaintiffs had hoped for at the outset of this litigation, the $702,000 settlement is still substantial.[3] Given the potential risks associated with proceeding with trial, the settlement is reasonable.

---

[3] Numerous courts have approved settlements with recoveries around or below this percentage. See, e.g., Schulte, 805 F. Supp. 2d at 583-84 (10% of the $96.5 million that is the class's maximum

### 2. Continued Litigation is Likely to be Complex, Lengthy, and Expensive.

While Illinois courts are generally guided by the balancing analysis set forth above, they also look at the likely complexity, length, and expense of continued litigation when weighing final approval.  Schulte, 805 F. Supp. 2d at 585-86 (citing Synfuel, 463 F.3d at 653). This factor supports approval of the settlement agreement in this case.  In addition to litigation over what deductions are recoverable, there will likely be complex and time-consuming proceedings required to determine the individual damages of all 717 class members.  Even though adding up the deductions is a matter of simple arithmetic, Plaintiffs will have to sift through weekly paper payroll records dating back to 2002 to determine each class members' total deductions.  Moreover, given the history of this case, further appeals of any judgment are a distinct possibility.

### 3. There Has Been No Opposition to the Settlement.

The Seventh Circuit has also instructed district courts to look at the amount of opposition to a settlement among affected parties in deciding whether to approve a class-action settlement.  Synfuel, 463 F.3d at 653.  There has been no opposition to the settlement.  Thus, this factor

---

potential recovery is fair) (collecting cases); Lazy Oil Co. v. Witco, 95 F.Supp.2d 290, 339 (W.D.Pa.1997) (approving settlement amounting to 5.35% of damages for the entire class period); Erie Forge and Steel, Inc. v. Cyprus Minerals Co., Civil No. 94–404 (W.D. Pa. Dec. 23, 1996) (approving settlement of $3.6 million where plaintiffs' expert estimated damages at $33 million); In re Domestic Air Transp. Antitrust Litig., 148 F.R.D. 297, 325 (N.D.Ga.1993) (12.7% to 15.3%); In re Newbridge Networks Sec. Litig., 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness"); In re Ravisent Techs., Inc. Sec. Litig., 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted).

strongly favors final approval here. See In re Mexico Money Transfer Litig., 164 F.Supp.2d 1002, 1021 (N.D.Ill.2000) (holding that the fact that more than "99.9% of class members have neither opted out nor filed objections . . . is strong circumstantial evidence in favor of the settlement"), aff'd, 267 F.3d 743 (7th Cir.2001); cf. The Authors Guild, et al. v. Google, Inc., 770 F.Supp.2d 666, 676 (S.D.N.Y.2011) (denying approval of Google's class action, in part because "an extremely high number of class members—some 6,800—opted out" and because "the objections [were] great in number"). A further update regarding any opposition will be provided at the final fairness hearing.

### 4. Opinion of Competent Counsel

The opinion of competent counsel is relevant to the question whether a settlement is fair, reasonable, and adequate under Rule 23. Synfuel, 463 F.3d at 653. Plaintiffs are represented by highly experienced and competent counsel who have litigated numerous wage and hour cases aggressively and successfully. Co-lead counsel, Attorney Harold Lichten, has litigated, tried, and settled numerous class action wage-and-hour cases in Massachusetts and across the country and is a recognized expert in labor and employment law.[4] Furthermore, Mr. Lichten's law firm, Lichten & Liss-Riordan, P.C., is a pioneer in the field of worker misclassification and has litigated and settled numerous class action matters filed in the federal courts.[5] Those settlements

---

[4]     Among other things, Mr. Lichten successfully argued the landmark cases on the application of the independent contractor test under the Massachusetts Independent Contractor Law, Somers v. Converged Access, Inc., 454 Mass. 582 (2009) and the New Jersey wage payment and wage and hour laws, Hargrove v. Sleepy's, LLC, 106 A.3d 449, 453 (N.J. 2015). Both cases dealt with the same ABC employment relationship test included in the IWPCA.

[5]     The class cases they have litigated and obtained final settlement approval from federal courts include: Spates v. Roadrunner Trans. Sys., Inc., No. 15-8723 (N.D. Ill.); Brandon v. 3PD, Inc., No. 13-3745 (N.D. Ill.); Badia v. Homedeliverylink, Inc., C.A. No. 12-6920 (D.N.J. Sept. 25, 2015) (Doc.# 99); Anderson v. HomeDeliveryAmerica.com, et al., C.A. No. 11-cv-10313 (D. Mass. Dec. 17, 2014) (Doc. #108); Mansingh v. Exel Direct, Inc., C.A. No. 12-11661 (D. Mass. May 7, 2014); Kiely v. TripAdvisor, LLC, C.A. No. 08-11284 (D. Mass. Aug. 8, 2011) (Doc. #52); Apana et al. v. Fairmont Hotels, Inc., C.A. No. 08-cv-00528 (D. Hawaii 2011); Carreiro, et al. v. Huntleigh Corp., et al., C.A. No. 08-10819 (D.

contained very similar terms to the proposed settlement in this case, including the same provision for attorneys' fees and the same basic method for notifying class members and distributing the settlement proceeds.

Attorneys Marc Siegel and Bradley Manewith also have extensive experience with class wage and hour litigation. They have both represented workers in over 100 wage and hour cases and were appointed as class counsel by federal courts in numerous class action settlements.[6]

Class Counsel are thus well aware of the law in this area, and their experience has provided the plaintiff class with a high degree of expertise, which contributed to a favorable resolution of their claims against BeavEx. Furthermore, Mr. Lichten's firm is also experienced in the mechanics of class settlement administration. In the more than 60 other cases the firm has settled as class actions, there have been thousands of class members overall requiring active engagement in processing claims from these settlements and distributing settlement proceeds. Furthermore, Class Counsel's experience helped save the class over $20,000 that would have been spent on an outside class action administrator.

---

Mass.); Elienberg v. RCN, C.A. No. 09-10912 (D. Mass.); Maliniski et al. v. Starwood Hotels, C.A. No. 08-11859 (D. Mass.); Monahan et al. v. WHM LLC d/b/a LXR Luxury Resorts and Boca Resorts, Inc. d/b/a Boca Raton Resort & Club, C.A. No. 09-CV-80198 (S.D. Fla.); Hayes et al. v. Aramark Sports Service LLC, C.A. No. 08-10700 (D. Mass.); Niles et al. v. Ruth's Chris Steak House, C.A. No. 08-07700 (S.D.N.Y.); Mitchell et al. v. PrimeFlight Aviation Services, C.A. No. 08-cv-10629 (D. Mass.); Barreda et al. v. Prospect Airport Svcs., C.A. No. 08-323 (N.D. Ill.); Miller et al. v. SBLI, C.A. No. 08-10267 (D. Mass.).

[6]     Attorneys Siegel and Manewith litigated and have been appointed class counsel in the following class action settlements in federal court: Stivers v. Illinois State Toll Highway Authority, No. 15-cv-09030 (N.D. Ill.); Brandon v. 3PD, Inc., No. 13-3745 (N.D. Ill.); Cardenas et al. v. John B. Sanfilippo & Son, Inc., No. 10-CV-01354 (N.D Ill.); Barreda, et al. v. Prospect Airport Servs., Inc., No. 08 C 03239 (N.D. Ill.); Sanchez, et al. v. Stampede Meat, Inc., et al., No. 02 C 5452 (N.D. Ill.); Singer v. Lockport Beef, LLC, et al., No. 14-cv-0670 (N.D. Ill.); Trevino v. Renaissance Roofing, Inc., et al., No. 12-cv-00024 (N.D. Ill.); Leon v. El-Milagro, Inc., No. 11-cv-04255 (N.D. Ill.)

Class Counsel's opinion that the proposed settlement is fair and reasonable under the circumstances should, therefore, be accorded considerable weight.

### 5. Stage of the Proceedings and the Amount of Discovery Completed at the Time of Settlement.

The last factor that the Seventh Circuit deems relevant to the question whether a class-action settlement is fair, reasonable, and adequate concerns the stage of the proceedings and the amount of discovery completed. Schulte, 805 F. Supp. 2d at 587 (citing Synfuel, 463 F.3d at 653). This factor is relevant because it determines "how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee, 616 F.2d 305, 325 (7th Cir.1980).

As discussed above, this case has been extensively litigated for over six years in this Court, the Seventh Circuit, and in the United States Supreme Court. The parties conducted thorough written and oral discovery. The parties conducted seven depositions. BeavEx produced approximately 3,000 pages of documents in response to Plaintiffs' discovery requests. In addition, Plaintiffs obtained pay statements for all 717 class members through a third-party subpoena to the payroll company used by BeavEx to pay the drivers. Furthermore, Plaintiffs produced over 250 pages of their own documents in response to BeavEx's discovery requests.

The stage of the proceedings supports settlement approval. The parties filed cross-motions for summary judgment (along with motions to reconsider), Plaintiffs filed a motion for class certification, and the case was appealed to the Seventh Circuit and U.S. Supreme Court. Finally, after the U.S. Supreme Court denied BeavEx's petition for certiorari and this Court scheduled the case for trial, the parties engaged in a full-day mediation with a respected mediator, which involved extensive additional informal discovery. Class Counsel, and the Court, are thus able to fully evaluate the merits of the claims brought here.

19

## V.     THE PROPOSED INCENTIVE PAYMENTS ARE FAIR AND REASONABLE.

Courts "routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." Dewey v. Volkswagen of America, 728 F. Supp. 2d 546, 577-78 (D.N.J. 2010) (citing Cullen v. Whitman Med. Corp., 197 F.R.D. 136, 145 (E.D. Pa. 2000)). See also Synthroid, 264 F.3d at 722 (incentive payments "are justified when necessary to induce individuals to become named representatives"). Relevant "factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir.1998) (approving incentive award of $25,000).

The settlement proposes incentive payments of $15,000 each to Megan Kephart and Osama Daoud. The proposed incentive payments are fair and reasonable, given that the Class Representatives initiated the lawsuit, and it was through their initiative that this recovery was obtained. Both Class Representatives provided invaluable assistance to Class Counsel over the course of six years. Each Class Representative provided Class Counsel with extensive documents, responded to discovery, and submitted to lengthy depositions. They also met with Class Counsel both in person and via telephone conference on numerous occasions to prepare for deposition, mediation, and/or to review and explain BeavEx's documents and discovery responses. Moreover, they attended the full-day mediation.

Courts have widely recognized that incentive payments serve an important function in promoting enforcement of state and federal law by private individuals, while also encouraging class action settlements. See Cook, 142 F.3d at 1017; In re Relafen Antitrust Litig., 231 F.R.D.

52, 82 (D. Mass. 2005); In re Compact Disc Min. Advertised Price Antitrust Litig., 292, F. Supp.

2d 184, 189 (D. Maine 2003); Sheppard v. Consol. Edison Co. of N.Y., Inc., 2002 WL 2003206,

at *5-6 (E.D.N.Y. 20020 (collecting cases approving incentive payments). Indeed, Judge

Guzman approved incentive payments of $20,000 each for two named plaintiffs in a similar case

involving delivery drivers who alleged they were misclassified as independent contractors, even

though that case had lasted a mere two-and-a-half years. See Brandon v. 3PD, Inc., No. 13-3745

(N.D. Ill. Jan. 26, 2016) (ECF No. 151).

As Judge Hornby recognized, a 2006 study found that while the average incentive

payment approved in class action settlements was around $15,000, awards in wage cases were

generally higher. Scovil v. FedEx Ground Package Sys., Inc., 2014 WL 1057079, at *6 (D. Me.

Mar. 14, 2014) (citing Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class

Action Plaintiffs: An Empirical Study,* 53 UCLA L. Rev. 1303, 1308 (2006)). Judge Hornby

found that recent awards in employment cases reached $30,000 and higher Id. (citing Cook, 142

F.3d at 1016 ($25,000 incentive award approved for one named plaintiff)); see also Harris v.

Chipotle Mexican Grill, Inc., 2018 WL 617972, *2 (D. Minn. Jan. 29, 2018) (approving

incentive payment of $15,000 to the two lead named plaintiffs in unpaid overtime case); Badia v.

Homedeliverylink, Inc., C.A. No. 12-6920 (D.N.J. Sept. 25, 2015) (Docket No. 99) (approving

incentive payments of $15,000 each to six named plaintiffs in case nearly identical to this one);

Massiah v. MetroPlus Health Plan, Inc., 2012 WL 5874655, *8 (E.D.N.Y. Nov. 20, 2012)

(approving service awards of $5,000 each to two plaintiffs, noting that "[s]uch service awards are

common in class action cases and are important to compensate plaintiffs for the time and effort

expended in assisting the prosecution of the litigation, the risks incurred by becoming and

continuing as a litigant, and any other burdens sustained by plaintiffs"); Toure v. Amerigroup

Corp., 2012 WL 3240461, at * 5 (E.D.N.Y. Aug. 6, 2012) (approving service awards of $10,000 and $5,000); Simmons v. Enterprise Holdings, Inc., 2012 WL 2885919, *2 (E.D. Mo. July 13, 2012) (approving "payment of individual incentive awards to the named Plaintiffs in the amount of $6,000.00 as set forth in the Settlement Agreement for their services as class representatives and as consideration for providing a general release"); Sewell v. Bovis Lend Lease, Inc., 2012 WL 1320124, at * 14–15 (S.D.N.Y. Apr. 16, 2012) (finding reasonable and approving service awards of $15,000 and $10,000 in wage and hour action); Reyes v. Altamarea Group, LLC, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving service awards of $15,000 to three class representatives and $5,000 to fourth class representative in restaurant case challenging tip and minimum wage policies); Willix v. Healthfirst, Inc., 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving service awards of $30,000, $15,000, and $7,500); Torres v. Gristede's Operating Corp., 2010 WL 5507892, at *8 (S.D.N.Y. Dec. 21, 2010) (finding reasonable service awards of $15,000 to each of 15 named plaintiffs); Khait v. Whirlpool Corp., 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (approving service awards of $15,000 and $10,000, respectively, in wage and hour class action); In re Janney Montgomery Scott LLC Fin. Consultant Litig., 2009 WL 2137224, *12 (E.D. Pa. July 16, 2009) (approving $20,000 payments to three named plaintiffs in complex FLSA)). Moreover, Judge Hornby approved $130,000 in incentive payments ranging from $10,000 to $20,000 for each of nine named plaintiffs who actively participated in the litigation. Id. See also Zolkos v. Scriptfleet, Inc., No. 12 Civ. 8230(GF), 2015 WL 4275540, at *3 (N.D. Ill. July 13, 2015) (awarding $148,000 in incentive payments to plaintiffs).

All of the named Plaintiffs were instrumental in bringing this class action.[7] Indeed, they have worked extensively with Class Counsel through the six years this case has been litigated. Both Class Representatives sat for full-day depositions. See ECF No. 77-10, 77-13. Both also responded to written discovery and produced hundreds of pages of their own documents. Moreover, both Class Representatives helped Class Counsel prepare for mediation and both attended the full-day mediation. The named Plaintiffs' contributions were invaluable, and no objections have been made to the proposed payments.

Additionally, one of the reasons for finding higher incentive payment in employment cases, including wage and hour cases, is the issue of retaliation. See, e.g., Overka v. Am. Airlines, Inc., 265 F.R.D. 14, 24 (D. Mass. 2010) (in certifying national class of skycaps challenging $2 per bag curbside check-in charges, court noted with approval skycaps' argument that "class adjudication is superior in the employment context because fear of employer retaliation may have a chilling effect on employees bringing claims on an individual basis" and held that class action "is a superior method for adjudication of the controversy"); Perez v. Safety-Kleen Systems, Inc., 253 F.R.D. 508, 520 (N.D. Cal. 2008) (concluding class action was superior because, *inter alia*, "some class members may fear reprisal"); Guzman v. VLM, Inc., 2008 WL 597186, at *8 (E.D.N.Y. 2008) (noting "valid concern" that "many employees will be reluctant to participate in the action due to fears of retaliation"). This same consideration makes enhancement payments even more crucial in employment class action settlements. As one court has observed: "[Enhancement] awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant,

---

[7]     Moreover, Ms. Kephart and Mr. Daoud's participation was vital to keeping this case alive, given that the original lead Plaintiff Thomas Costello withdrew from this case on June 20, 2016. ECF No. 174.

and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005). Thus, the proposed incentive payments to Kephart and Daoud are fair and reasonable.

## VI. CLASS COUNSEL'S REQUEST FOR ATTORNEY'S FEES AND EXPENSES IS REASONABLE AND SHOULD BE GRANTED.

Class Counsel propose that one-third ($234,000) of the Settlement Class Fund be set aside for the payment of attorneys' fees, costs, including the costs of mediation, and administration of the class settlement. The fee was agreed to by the parties. Moreover, Class Counsel took this case on a contingency-fee basis, where the Plaintiffs agreed to pay a one-third fee, thus risking the possibility that they would recover no fees.

The award negotiated by the parties would cover all costs incurred to date by Class Counsel, as well as the costs Class Counsel have incurred and will continue to incur related to the in-house administration of the settlement by distributing class notice via first class mail, electronic mail, and by telephone, calculating actual share distributions, and taking care of all mailings and filings. By administering the settlement in-house, Class Counsel has saved the Settlement Class Members at least $20,000 that would have been needed to hire an outside class action administration firm. Moreover, Class Counsel have paid for the costs associated with seven depositions, half the mediation fees, travel costs, and fees related to the investigation and filing of this case. Thus, Class Counsel believes that the requested fee is fair, appropriate, and in line with multiple other similar settlements.

"[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." Taubenfeld v. Aon Corp., 415 F.3d

597, 599 (7th Cir.2005) (quoting In re Synthroid Marketing Litigation, 264 F.3d 712, 718 (7th

Cir.2001)).  In making such a determination, the court can consider fees awarded in other cases,

the quality of legal services rendered, and the risk of non-recovery when the case is taken on a

contingent basis.  Taubenfeld, 415 F.3d at 600.

Many Illinois courts have utilized the percentage-of-recovery method when weighing

requests for attorney's fees because it is consistent with the need to incentivize lawyers to

resolve cases early and to avoid over-litigating them in order to recover a larger fee.  McCue v.

MB Fin., Inc., 2015 WL 4522564, at *3 (N.D. Ill. July 23, 2015) (citing In re Synthroid Mktg.

Litig., 325 F.3d 974, 979–80 (7th Cir.2003) (explaining benefits of the percentage of fund

method are that if "class counsel invested too many hours, dallied when preparing the settlement,

or otherwise ran the meter, the loss falls on counsel themselves")).  As this Court held, the

Seventh Circuit "as well as a majority of other circuit court's have approved the use of the

percentage of the fund method to award attorney's fees in class-action/common fund cases" and

that "[m]any courts in this district have utilized this method of establishing fees and 33.3% of the

fund plus expenses is well within the generally accepted range of the attorneys fee awards" in

class-action cases.[8]  In re Lithotripsy Antitrust Litig., 2000 WL 765086, at *2 (N.D. Ill. June 12,

---

[8]     Illinois courts, meanwhile, have been critical of using a lodestar method to assess fees. Will v.
General Dynamics Corp., 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) ("The use of a lodestar
cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive."); In re
Comdisco Sec. Litig., 150 F.Supp.2d 943, 948 n. 10 (N.D.Ill.2001) ("To view the matter through the lens
of free market principles, [lodestar analysis] (with or without a multiplier) is truly unjustified as a matter
of logical analysis.").  A lodestar method can be inequitable because "class counsel's efficiency should
not be used "to reduce class counsel's percentage of the fund that their work produced."  Will, 2010 WL
4818174, at *3.
        Some courts, however, have used the lodestar method as a cross-check.  "The crosscheck is
performed by dividing the proposed fee award by the lodestar calculation, resulting in a lodestar
multiplier."  Davis v. J.P. Morgan Chase & Co., 827 F. Supp. 2d 172, 184-85 (W.D.N.Y. 2011)
(approving multiplier of 5.2 in employment class action).  "Courts regularly award lodestar multipliers
from two to six times lodestar."  Johnson v. Brennan, 2011 WL 4357376, at *20 (S.D.N.Y. Sept. 16,
2011) (collecting cases).  Here, due to the substantial litigation in this case over the last six years,

2000).  As the Supreme Court has explained:

> This Court has recognized consistently that a litigant or lawyer
> who recovers a common fund for the benefit of persons other than
> himself or his client is entitled to reasonable attorneys' fee from
> the fund as a whole . . . jurisdiction over the fund involved in the
> litigation allows the Court to prevent . . . inequity by assessing
> attorneys' fees against the entire fund thus spreading fees
> proportionally among those benefited by the suit.

Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980).  The percentage-of-the-fund method is

preferred because it "better aligns the interests of class counsel and class members….by tying the

attorneys' award to the overall result achieved rather than the hours expended by the attorneys".

Kay Co. v. Equitable Production Company, 749 F. Supp. 2d 455, (S.D.W. Va. 2010). The

percentage of the fund approach awards counsel for effectively bringing a class action case to a

resolution rather than prolonging the case in the hopes of artificially increasing the number of

hours worked on the case. Id. at 462

        In this matter, the percentage-of-recover method is most appropriate.  Class Counsel

executed contingency fee agreements with the named Plaintiffs and the agreement between

Plaintiffs and BeavEx calls for the requested fee based on a percentage of the fund.  Here, an

attorney's fee of $234,000, which is approximately one-third of the settlement fund, is

reasonable in light of percentages typically awarded to Plaintiffs' firms in class action

settlements with a common fund in Illinois.  Indeed, a one-third attorneys' fee award in a

common fund case has been consistently approved as reasonable in many wage and hour cases in

the Northern District of Illinois.  See, e.g., Stivers v. Illinois State Toll Highway Authority, No.

15-cv-09030, slip op. at 3 (N.D. Ill. Jan. 18, 2017) (awarding 1/3 of the common fund as

---

Class Counsel have generated approximately $414,298.75 in attorney's fees.  See Decl. of Harold Lichten
at ¶ 6; Decl. of Bradley Manewith at ¶ 8.  Thus, the lodestar multiplier is less than 1.  This further
demonstrates the reasonableness of the requested one-third fee.

attorneys' fees; Brandon, No. 13-3745 (N.D. Ill. Jan. 26, 2016) (ECF No. 151) (approving one-third fee for same Class Counsel in nearly identical case); McCue v. MB Fin., Inc., 2015 WL 4522564, at *3 (N.D. Ill. July 23, 2015) (approving use of the percentage of the common fund recovery in the settlement context and awarding 1/3 of common fund as attorneys' fees); Zolkos, 2015 WL 4275540, at *3 (N.D. Ill. July 13, 2015) (awarding 1/3 of the common fund as attorneys' fees); In re Lithotripsy Antitrust Litig., 2000 WL 765086, at *2 (approving fee of 33.3 percent of the fund); Acosta, et al. vs. Scott Labor, et al., Case No. 05 C 2518 (D.E. 120) (Gettleman, J.) (awarding 33 1/3% of common fund in overtime case); Yon v. Positive Connections, Inc., Case No. 04 C 2680 (D.E. 69) (Darrah, J.) (awarding 33% of the common fund in overtime case); Sanchez v. Stampede Meat, Inc., Case No 02 C 5452 (D.E. 70) (awarding 33 1/3% of common fund in overtime case); Gonzalez v. Labor Network, Case No. 05 C 4864 (D.E. 137) (awarding 33 1/3% of common fund in overtime case); Perugachi v. Valet Parking Service, Inc., Case No. 04 C 1783 (D.E. 60) (awarding 33% of the common fund in overtime case); Alejandro v. Surestaff, Inc., Case No. 04 C 2889 (D.E. 33) (awarding 33% of the common fund in overtime case); Aguirre et al v. Central Continental Bakery, Inc., Case No. 05 C 2013 (D.E. 54) (awarding 33% of the common fund in overtime case); Herrera v. Chicago Mattress, Inc., Case No. 06 C 1872 (D.E. 49) (awarding 33% of the common fund in overtime case); Flores v. Jorge Arteaga Corp., Case No. 05 C 2057 (D.E. 53) (awarding 33 1/3% of common fund in minimum wage and overtime case); Ortegon v. Staffing Network, Inc., Case No. 06 CH 12679, Order dated July 24, 2009, (awarding 33% of common fund in IDTLSA and overtime case); Perezchica, et al. vs. Eastco International Corp., et al, Case No. 07 CH 04726, Order dated March 18, 2008 (awarding 33 1/3% of common fund in overtime case).

Furthermore, federal courts in other districts have routinely approved a one-third fee for counsel in similar cases where delivery drivers alleged they were misclassified as independent contractors and subject to illegal wage deductions. See Taveras v. XPO Last Mile, Inc., No. 15-1550 (D. Conn. Aug. 11, 2017) (approving one-third fee for counsel Harold Lichten following settlement of nearly identical claims of delivery drivers); Scovil v. FedEx Ground Package Sys., Inc., 2014 WL 1057079, at *5 (D. Me. Mar. 14, 2014) (approving one-third fee for attorney's fees and finding that "such a fee is consistent with wage-and-hour settlements"); Gennell v. FedEx Ground Package Sys., Inc., C.A. No. 05-00145-PB (D.N.H. filed Dec. 30, 2014), Docket No. 108 (granting one-third fee for counsel of FedEx delivery drivers bringing claims nearly identical to those here); Badia v. Homedeliverylink, Inc., C.A. No. 12-6920 (D.N.J. Sept. 25, 2015) (Docket No. 99); Anderson v. Home Delivery America et al., C.A. No. 11-10313 (D. Mass. Dec. 17, 2014) (ECF No. 108) (same for drivers delivering Sears products); Mansingh v. Exel Direct, Inc., C.A. No. 12-11661 (D. Mass. May 7, 2014); Sanchez v. Lasership, Inc., C.A. No. 12-00246 (E.D. Va. April 8, 2014) (ECF No. 176); Sherman v. American Eagle Express, Inc., C.A. No. 09-575 (E.D. Pa. April 24, 2013) (ECF No. 292); Melzard v. ScriptFleet, Inc., Civil Action No. 1200733-B (Norfolk Super. Ct.).

The other relevant factors also support the fee sought by Class Counsel. Class Counsel incurred a significant risk of nonpayment by accepting this case. Trans Union, 629 F.3d at 746 ("within the set of colorable legal claims, a higher risk of loss does argue for a higher fee."). As discussed in detail above, BeavEx possesses a number of potentially fatal defenses to Plaintiffs' claims. Indeed, the fact that, at the inception of this lawsuit, there was no certainty that Plaintiffs would win, or that the case would settle, and that Class Counsel would receive no fees at all, weighs heavily in granting Class Counsel's requested fee. Id.

Furthermore, that Class Counsel litigated this case purely on a contingency fee basis strongly support granting fees based on a percentage of the fund.  See Sutton v. Bernard, 504 F.3d 688, 694 (7th Cir.2007) ("there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit").  The Seventh Circuit has recognized that "the higher the risk of failure the higher the contingent fee that a client would have to pay in an arm's length negotiation with the lawyer in advance of the suit."  Schulte, 805 F. Supp. 2d at 597-98 (quoting Trans Union, 629 F.3d at 746).  Courts have acknowledged that the risk of nonpayment in most contingency work is "high" and must be considered when weighing an application for attorney's fees.  Hall v. AT & T Mobility LLC, 2010 WL 4053547, at *20 (D.N.J. Oct. 13, 2010) (quoting In re Prudential–Bache Energy Income P'ships Sec. Litig., 1994 WL 202394, at *6 (E.D. La. May 18, 1994)).

Moreover, Class Counsel have litigated this case extensively in the six years it has been pending.  Including the hours spent on administration of the settlement, the two law firms that represent the class will have spent more than 1,156 hours on this case.  See Decl. of Harold L. Lichten at ¶ 6 (attached as Ex. E); Decl. of Bradley Manewith (attached as Ex. F).  Discovery alone has been extensive.  Class Counsel has issued and responded to written discovery, obtained and examined over 5,000 documents from BeavEx and a third-party payroll company, conducted three lengthy depositions of BeavEx managers, and defended the depositions of the two named Plaintiffs, as well as former named Plaintiff Thomas Costello who withdrew from this case.

Furthermore, Class Counsel have successfully litigated this case over the last six years. Class Counsel 1) sought, and won, summary judgment for the named Plaintiffs; 2) successfully appealed a ruling on class certification to the Seventh Circuit; 3) successfully defended this

Court's ruling on FAAAA preemption in the Seventh Circuit; 4) successfully defeated BeavEx's attempt to seek certiorari review in the United States Supreme Court; and 5) won class certification on behalf of all of BeavEx's couriers in Illinois since 2002. Class Counsel have also spent close to $20,000 for depositions, travel, and mediation. This does not include the amount of money Class Counsel have saved the class by administering the settlement in house, which is at least $20,000. Moreover, these figures do not include the time and costs required to obtain final settlement approval, send out three rounds of settlement checks, and handle questions and additional claims from class members.

Due to the extensive litigation conducted by Class Counsel, as well as the considerable risk of non-recovery here, the requested attorney's fees are fair and reasonable and should be approved.

## VII.   CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that this Court grant final approval of this proposed class action settlement and sign the proposed order attached as Exhibit G.

Dated: May 30, 2018                                  Respectfully submitted,

Marc Siegel, #6238100                            MEGAN BAASE KEPHART and
Bradley Manewith, #06280535                 OSAMA DAOUD, individually and on
Siegel & Dolan Ltd.                                   behalf of all others similarly situated,
150 North Wacker Drive, Suite 1100
Chicago, IL  60606                                   By: /s/ Bradley Manewith
                                                                  Attorney for Plaintiffs

Harold L. Lichten, BBO# 549689
Benjamin J. Weber, BBO# 673736
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a copy of the attached, **Plaintiffs' Agreed Motion for Final Approval of Class Action Settlement**, was sent to all counsel of record by electronically filing the same with the Clerk of the U.S. District Court of the Northern District of Illinois on May 30, 2018.


/s/ Bradley Manewith
Bradley Manewith